In re Roberto LUGO, Debtor.

Roberto LUGO, Plaintiff/Appellant,

v.

Glenn PAULSEN, Individually and in his capacity as Director of the New Jersey Division of Motor Vehicles; the N.J. Division of Motor Vehicles; N.J. Automobile Insurance Surcharge and Collection; New Jersey Automobile Full Insurance Underwriting Association; and W. Cary Edwards, individually and in his capacity as Attorney General of New Jersey, Defendants/Appellees.

Civ. A. No. 88–3931.

United States District Court, D. New Jersey.

Jan. 5, 1989.

As Amended Jan. 13, 1989.

Neil J. Fogarty, Hudson County Legal Services, Jersey City, N.J., for Roberto Lugo.

Michael Buckley, Francis & Berry, Morristown, N.J., for Joint Underwriting Assn.

Felice Weiner, Deputy Atty. Gen., N.J. Div. of Law, Licensing & Econ. Development Section CN 112, Trenton, N.J., for State defendants/appellees.

## OPINION

SAROKIN, District Judge.

### INTRODUCTION

The court is here confronted with two conflicting legislative purposes. The federal law seeks to discharge debts and provide an insolvent person with a fresh start. The state law seeks to deter drunk drivers by requiring that they make a substantial contribution to a general insurance fund once they are convicted. Whether or not the obligation is characterized as a debt, a penalty or a mandatory insurance premium affects the judicial analysis. Ultimately, however, the court concludes that such surcharges imposed by the state against those convicted of drunk driving are not dischargeable in bankruptcy. The need to deter such conduct is specifically recognized by federal statute and state efforts toward that purpose are specifically anticipated and exempted from discharge. In essence, the legislative policy of both the state and federal law recognizes the need to deter drunk driving and prohibits the use of a bankruptcy proceeding to avoid the consequences of such acts.

Roberto Lugo appeals from the final order of the Hon. William Tuohey, United States Bankruptcy Judge, entered in this adversary proceeding on August 18, 1988. Appellees are the New Jersey Division of Motor Vehicles (DMV), individual officials and a subdivision of the DMV, and the New Jersey Automobile Full Insurance Underwriting Association (JUA), an unincorporated, non-profit association of insurers licensed to provide automobile insurance in New Jersey.[1]

The question before the court is whether the collection of a surcharge pursuant to N.J.S.A. 17:29A–35 conflicts with the federal Bankruptcy Code, 11 U.S.C. Section 101 *et seq.*

BACKGROUND

The facts are not in dispute.[2] On June 6, 1985, appellant Lugo was convicted in East Rutherford Municipal Court of driving while intoxicated in violation of N.J.S.A. 39:4–50(a). The court imposed a $250 fine and a $100 surcharge payable to East Rutherford. Mr. Lugo's driver's license was revoked for six months and he was required to attend a 12–hour educational program.

In January, 1986, Mr. Lugo received a notice from the New Jersey Department of Motor Vehicles (DMV) stating that he owed $3,000 for an "insurance surcharge bill." Mr. Lugo was informed that he was allowed to pay a $3,000 lump sum, or $1,000 per year for three years, or $175 per month if indigent. The DMV notice warned Mr. Lugo that his license would be suspended until he paid the $3,000 surcharge.

The $3,000 surcharge is levied pursuant to the New Jersey Merit Rating Plan, N.J.S.A. 17:29A–35. The purpose of the surcharge is to fund the JUA and to help cover the JUA's deficits, which amounted to $2.6 billion this year. The surcharge is imposed on all drivers who are convicted of driving while intoxicated, including those who own no car. DMV collects the statutory surcharges, remitting at least 90% to the JUA, and retaining up to 10% to pay for the collection costs.[3] The Merit Rating Plan provides that if a driver fails to pay a surcharge, the driver's license "shall be suspended forthwith until the surcharge is paid to the Division of Motor Vehicles." N.J.S.A. 17:29A–35(b)(2).

On July 30, 1986, Mr. Lugo filed a voluntary petition in Chapter 7. In his bankruptcy petition, Mr. Lugo listed the $3,000 surcharge bill scheduled as owing to the JUA and the DMV. DMV restored Mr. Lugo's driving privileges in October, 1986 after being notified about the bankruptcy petition. On December 12, 1986, Mr. Lugo received a discharge in bankruptcy. At the time of the discharge none of the defendants had objected to the bankruptcy proceeding, nor had any complaints been filed to determine the dischargeability of any claim.

On January 15, 1988, the DMV mailed to Mr. Lugo an insurance surcharge bill demanding a $1,000 installment payment, and threatening license suspension on February 26, 1988 if the surcharge was not paid. DMV proceeded with the collection of this surcharge notwithstanding the fact that Mr. Lugo had already received a discharge in bankruptcy, having listed among his debts the surcharge. Mr. Lugo thereafter sought to reopen the bankruptcy proceeding to establish that the $3,000 surcharge had been discharged. Mr. Lugo also sought to enjoin the suspension of his driver's license and further collection efforts in connection with the insurance surcharge. He is indigent and has not owned a car since 1985.

In an order filed August 18, 1988, the Honorable William Tuohey found that the $3,000 insurance surcharge was nondischargeable and dismissed the complaint in

---

**1.** The JUA concurs in, and relies upon, the arguments set forth in the State appellees' principal brief.

**2.** The court agrees with appellee that the bankruptcy court's two factual errors, relating to the size of JUA's deficit and the date of Mr. Lugo's conviction, were not relied upon to support legal conclusions. They are corrected herein.

**3.** 17:29A–35(b) was recently amended. A.3702, section 9, p. 11; L.1988, c.156. Under the prior law, the DMV received 20% of the moneys collected.

its entirety. In the accompanying opinion, Judge Tuohey characterized the central issue as "the ability of a debtor to discharge the insurance surcharge assessed after a drunk driving conviction." Judge Tuohey followed the reasoning of a recent decision of the Bankruptcy Court in *In re Graham,* 85 B.R. 713 (Bankr.D.N.J.1988) [hereinafter *"Graham"*], which held that surcharges levied under the Merit Rating Plan as a result of convictions for driving while intoxicated are not debts subject to discharge in a Chapter 7 proceeding. Judge Tuohey was persuaded by *Graham's* characterization of the surcharge as "simply an additional premium" payable for required liability insurance coverage in the future.

Appellant contended below that the surcharge is not an "additional insurance premium," pointing to the fact that Mr. Lugo owns no car and buys no insurance. Judge Tuohey rejected appellant's argument as ignoring that the insurance surcharge is part of a "comprehensive legislative plan ... to provide insurance for those persons previously unable to obtain insurance at commercial rates, and, in addition, to protect the citizens of the State of New Jersey from the scourge of drunk drivers who are a risk to the public at large."

Judge Tuohey noted that JUA's deficits are covered by assessments made on each insured vehicle in this State. N.J.S.A. 17:30E–3(*o*); N.J.S.A. 17:30E–8(b). Allowing debtors to discharge surcharges in bankruptcy would reduce revenues available to the JUA. Thus, Judge Tuohey concluded that the surcharges are, in effect, insurance premiums when considered as part of the "global revamping" of the state's insurance system.

Judge Tuohey found that 11 U.S.C. Section 525, which prohibits the government from denying, revoking, or suspending a license solely because an individual is a debtor or has not paid a debt that is dischargeable, does not provide relief to Mr. Lugo. Judge Tuohey relied upon 11 U.S.C. Section 523(a)(9), which excludes from discharge any debt

> to any entity, to the extent that such debt arises from a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated....

Judge Tuohey concluded that Mr. Lugo "is not required to pay the aforesaid $3,000.00 surcharge. He has the option of not operating a motor vehicle pursuant to a driver's license issued by the State of New Jersey." Judge Tuohey also dismissed Mr. Lugo's Section 1983 claims, citing appellant's failure to show any personal involvement on the part of the named individual defendants.

Mr. Lugo thereafter filed this appeal, asking this court to find that the imposition of the Merit Rating Plan's surcharge conflicts with the federal bankruptcy code and must therefore be held unconstitutional as applied under the Supremacy Clause.

DISCUSSION

*Is the Surcharge a Debt?*

■ To prevail on this appeal, Mr. Lugo must first demonstrate that the $3,000 surcharge is a prepetition debt, as defined by the Bankruptcy Code. Judge Tuohey found that the $3,000 surcharge is not a "debt" or "claim" within the Code's meaning. Relying upon the argument set forth in *Graham,* Judge Tuohey held that the surcharge does not give rise to a right to payment; rather, it simply serves as additional insurance. Appellees reiterate these arguments on appeal, citing *Graham* as well as two other decisions of the bankruptcy courts. We treat each case in turn.

In *Graham,* Judge Gindin found that the surcharge

> is part of a statutory scheme for the establishment of appropriate insurance premiums. N.J.S.A. 17:29A–33 *et seq.*
>
> The laws of the State of New Jersey require that all drivers demonstrate the vehicle being operated is covered by liability insurance. N.J.S.A. 39:3–29. Failure to evidence such insurance results in the suspension of a driver's license until such time as insurance is obtained.... Thus, by its description, the surcharge is

simply an additional premium payable for the necessary insurance.

85 B.R. 713, at 715–16.

Judge Gindin relied upon two other cases that approved the use of prepetition experience in establishing future insurance premiums. In *In re The A.C. Williams Company*, 51 B.R. 496 (Bankr.N.D.Ohio 1985), the Ohio Bureau of Workers' Compensation used prepetition safety records to set future premiums. The court described the Bureau's function as follows:

> The premium rate determination is in part based upon the employer's past experience in the workplace.... The application of the rate creates a fund which is to be used *prospectively*. The rate determination takes into account the safety, or lack of it, in the workplace so that the fund will remain solvent.... In making these assessments, the Bureau is not attempting to collect a prepetition debt. The court refuses to read the Code so broadly as to include the prepetition claim experience within its definition of "claim."

51 B.R. at 501 (emphasis in original). The court rejected an employer's claim that the practice violated an antidiscrimination provision of the Bankruptcy Code (Section 525) as well as the federal policy in favor of providing a fresh start to debtors. 67 B.R. at 501. Appellees argue that the Merit Rating Plan surcharges at issue here are akin to the rate increases upheld in *In re A.C. Williams Co.* In both cases, appellees argue, assessments are based upon prepetition safety records, they would be assessed regardless of whether the debtors had received a discharge in bankruptcy, and they create a fund to be used prospectively.

In *In re Primrose Bedspread Corp.*, 67 B.R. 659 (Bankr.D.N.J.1986), the court held that the New Jersey Department of Labor's consideration of a company's prepetition experience in determining its future unemployment tax contributions did not violate Section 525 or the federal fresh start policy.

Mr. Lugo contends that none of the three cases applies to this case because the sur-

charges are not insurance premiums. Mr. Lugo points to a recent Bankruptcy Court decision by Judge Stephen Stripp in *In re Robert Bill*, 90 B.R. 651 (Bankr.D.N.J. 1988) (Appendix to Appellant's Reply Brief). In *In re Bill* Judge Stripp noted the significance of the fact that the statutory surcharges at issue are imposed regardless of whether the debtor owns a vehicle. In New Jersey, a driver does not need his or her own insurance; rather, the *owner* of a vehicle is required to have insurance. N.J.S.A. 39:6A–3. Judge Stripp concluded that

> ... if it is the owner who is required to obtain insurance, and if a surcharge is imposed on the driver rather than the owner, the surcharge is not insurance.... It is, rather, a penalty imposed to supplement the JUA fund.

(At 655).

Appellees rely upon a decision of the Appellate Division of the New Jersey Superior Court, in which the surcharges were characterized as "a monetary assessment in accordance with a uniform schedule for the privilege of driving on the highways." *Clark v. New Jersey Div. of Motor Vehicles*, 211 N.J.Super. 708, 711, 512 A.2d 588 (App.Div.1986). Appellees contend that the surcharges are "a substitute, under the current automobile insurance scheme in New Jersey, for the increase in insurance premiums formerly charged a convicted drunk driver by insurance companies." (Appellees' Brief, at 2). Under the previous system, appellees argue, Mr. Lugo's DWI conviction

> would have resulted in the imposition of surcharges by an insurance company on a policy covering any automobile he usually drove. Failure to pay the surcharge would have resulted in suspension of driving privileges. Insurance surcharges, based on convictions, were never tied to the ownership of a motor vehicle.

(Appellee's Brief, at 23).

The workings of the previous system do not determine the present inquiry. Under the current system, the surcharge is imposed on debtors regardless of whether

they own a car. In this case, Mr. Lugo has not owned a car or carried insurance since 1985. "Surcharge" is a misnomer, since there is no premium to which the statutory payment is *added*. Mr. Lugo obtains no benefit by virtue of paying the $3,000. The court rejects appellees' contention that the surcharge constitutes a prospective insurance premium.

11 U.S.C. Section 101(11) defines "debt" as a "liability on a claim." Section 101(4) defines "claim" as a

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

The legislative history to the Bankruptcy Reform Act of 1978 notes that the definition of "claim" marks a "significant departure" from prior law. The legislative history is clear that

> By this broadest possible definition ... the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.

H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 309, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6266; *see also* S.Rep. No. 95–989, 95th Cong., 2d Sess. 21–22, *reprinted in* 1978 U.S.Code Cong. and Admin.News 5787, 5807–08 (virtually identical statement). The Third Circuit has recognized the "far-reaching scope of this definition." *In re Remington Rand Corp.*, 836 F.2d 825, 829 (3d Cir.1988).

In *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), the Supreme Court unanimously confirmed that "claim" was to be interpreted broadly. In *Kovacs*, the State of Ohio obtained an injunction ordering Kovacs to clean up a hazardous waste site. Thereafter Kovacs filed a petition for bankruptcy. The Supreme Court held that Kovacs' obligation under the injunction was a "debt" or "liability on a claim" subject to discharge under the Bankruptcy. 469 U.S. at 283, 105 S.Ct. at 709–10.

In examining the Bankruptcy Code, the Court noted that Congress had made nine exceptions to discharge in 11 U.S.C. Section 523(a). The Court made clear that

> Except for the nine kinds of debts saved from discharge by 11 U.S.C. 523(a), a discharge in bankruptcy discharges the debtor from all debts which arose before bankruptcy. 469 U.S. at 278, 105 S.Ct. at 707.

The Court rejected the State's contention that Kovacs' obligation to clean the site was not a "debt." The basis for the Court's holding was that the cleanup duty had been reduced to a *monetary obligation, id.* at 282, 105 S.Ct. at 709, thus giving rise to a right to payment under Section 101(4).

The court finds *Kovacs* to be dispositive on the issue of whether the $3,000 surcharge is a "debt" or "liability on a claim." In *Kovacs*, as in this case, the State imposed a monetary obligation on the debtor, to be applied towards costs associated with the debtor's actions. Appellees' argument that the surcharge is not a "claim" or "debt" because it serves as a "substitute" for insurance or is to be used in the future to pay for costs attributable to Mr. Lugo fails under *Kovacs*. In *Kovacs*, a money obligation arose out of the claimant's contamination of the environment and the money was to be used to pay for clean-up. The Supreme Court held that the obligation was dischargeable under the Bankruptcy Code. Under the holding of *Kovacs*, the court finds that the $3,000 surcharge is a "debt" or "liability on a claim." [4]

---

**4.** Appellees argue that no "debt" exists because the statute does not allow the DMV to bring an action to collect the surcharge. However, the threat of a suspended driver's license provides appellees with ample means to enforce its right to payment.

*Is the Surcharge a Prepetition Debt?*

■ The existence of a valid claim also depends on *when* a right of payment arises. *In re Remington Rand Corp.*, 836 F.2d 825, 832 (3d Cir.1988). Although "claim" is defined by Section 101(4), the Code does not define *when* a right to payment arises. This question is to be determined by reference to state law. *Matter of M. Frenville Co., Inc.*, 744 F.2d 332, 337 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985); *In re Graham*, 85 B.R. 713, 715 (Bkrtcy.D.N.J.1988).

Appellees seem to argue that the $3,000 surcharge is not a prepetition debt because it will be used *prospectively* to cover JUA's costs, again relying on *A.C. Williams Co.* and *Primrose Bedspread Corp. See also Clark*, 211 N.J.Super. at 710, 512 A.2d 588. The court is not persuaded that the fact that a surcharge will be used to cover *future* costs renders it a *post*-petition debt. Appellees state that "[s]urcharges are, by operation of the statute, an inevitable consequence of a conviction for drunk driving." (Appellees' Brief, at 29). The DMV sent a notice demanding payment of the surcharge in January, 1986, six months before Mr. Lugo even filed a petition for bankruptcy. The court is satisfied that the surcharge accrued prior to the filing for bankruptcy in this case. This finding that the surcharge gave rise to a prepetition right to payment does not end the court's inquiry, for Congress also created exemptions from discharge for nine types of debts, two of which are at issue here.

*Is the Surcharge Excluded from Discharge Under Section 523(a)(7)?*

■ In 11 U.S.C. Section 523(a)(7), Congress created an exemption from discharge for claims involving penalties and forfeitures owed to a governmental unit. The provision reads as follows:

A discharge ... does not discharge an individual debtor from any debt ... to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty....

Appellees submit that the surcharges, if "debts" at all, are civil, remedial penalties payable to and for the benefit of the Division of Motor Vehicles, a governmental entity. This argument is inconsistent with appellees' prior argument that the surcharges constitute "insurance premiums," and are not penalties. (Appellees' Brief, at 14). Even if the surcharge were properly termed a "penalty," appellees would also have to demonstrate that the moneys collected are "payable to and for the benefit of a governmental unit." Under N.J.S.A. 17:29A–35(b)(2), as amended, at least ninety per cent of the surcharge bill is remitted to the JUA, a *private* association of insurance companies. The DMV retains only the *actual cost* of administering the collection of the surcharges.

It is clear that Section 523(a)(7) does not apply to moneys payable to the JUA, since it is not a governmental unit. The DMV, which is a governmental unit, retains only money necessary to compensate it for the actual costs of administering the collection, or the government's "actual pecuniary loss." The surcharge is therefore not within the definition of a Section 523(a)(7) exception.

*Is the Surcharge Excluded from Discharge Under Section 523(a)(9)?*

■ Section 523(a)(9) states that

A discharge ... does not discharge an individual debtor from any debt ... to any entity, to the extent that such debt arises from a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated....

This section was added to the Code as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984. P.L. No. 98–353; 98 Stat. 333.

Appellees contend that the surcharge falls within this exception to dischargeability. It is undisputed that Mr. Lugo was guilty of driving while intoxicated. Appellees argue that Section 523(a)(9) renders nondischargeable any liabilities, including the $3,000 surcharge, that *result from* a conviction for driving while intoxicated.

Since the surcharge results from Mr. Lugo's conviction, appellees conclude, it is not dischargeable.

Appellant Lugo argues that the exceptions listed in Section 523 should be construed narrowly to comport with the federal fresh start policy. In particular, appellant argues, Section 523(a)(9) should be applied only to civil tort liability, relying upon legislative history.

There is support in the legislative record to suggest that Congress, in drafting Section 523(a)(9), intended to close a loophole that had thwarted victims of drunk driving accidents who sought to recover judgments against tortfeasors. 129 Cong.Rec. S5326 (daily ed. April 27, 1983) (statement of Sen. DeConcini); 130 Cong.Rec. H7492 (daily ed. June 29, 1984) (statement of Rep. Sawyer); 130 Cong.Rec. S8889 (June 29, 1984) (statement of Sen. Dole), *reprinted in* 1984 U.S. Code Cong. & Admin.News 576, 587.

The court recognizes the general principle that exceptions to dischargeability are to be strictly construed. *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915). However, neither the words of the statute nor the legislative statements offered by Mr. Lugo support his reading of Section 523(a)(9). The court begins with the language of the statute itself. *Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1547–48, 79 L.Ed.2d 891 (1984).

> The statute excludes from discharge any debt ∴ *to any entity,* to the extent that such debt *arises from* a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred by such debtor *as a result of the debtor's operation* of a motor vehicle while legally intoxicated....

11 U.S.C. Section 523(a)(9) (emphasis added).

The court draws attention to the words "to any entity," "arises from," and "as a result of the debtor's operation." Limiting the exception to civil tort liability to actual victims clashes with the words "to any entity." Requiring the debt to be included in the original judgment is inconsistent with the words "arises from." Restricting dischargeability to debts incurred only in motor vehicle accidents is inconsistent with the words "as a result of the debtor's operation." In sum, Mr. Lugo's interpretation would render nugatory the words of the statute.

The Ninth Circuit Court of Appeals has recently interpreted Section 523(a)(9). *See In re Hudson,* 859 F.2d 1418 (9th Cir.1988). The Ninth Circuit found that Congress sought three objectives when it adopted section 523(a)(9): (1) to deter drunk driving; (2) to ensure that those who cause injury by driving drunk did not escape civil liability through the bankruptcy laws; and (3) to protect victims of drunk driving. *Id.* at 1423.

There is no question that Congress intended to preclude debtors from discharging civil judgments arising out of drunk driving accidents. The actual language of the statute, however, demonstrates that Congress did not intend to exclude only civil tort liability. None of the statements relied upon by Mr. Lugo suggest that the exception be so limited. Indeed, the Ninth Circuit inferred from the statement of the Senator who first introduced the bill that "Congress was concerned less with whether a judgment had been obtained against the debtor than with the underlying conduct giving rise to the cause of action." *Id.* at 1422.

The court is constrained by the principle that "[a]bsent a clearly expressed legislative intention to the contrary, [the statutory] language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Given the actual words of the statute, and the lack of any legislative history to the contrary, this court finds no basis to restrict the exception to civil tort liability.

The statutory language seems designed to insure that all debts arising out of the use of a motor vehicle while intoxicated are nondischargeable. This provision serves one of Congress' primary purposes in enacting Section 523(a)(9)—to deter drunk driving. The $3,000 debt arose out of a judgment entered in a court of record against Mr. Lugo, as a result of his opera-

tion of a motor vehicle while intoxicated. The judgment, by operation of a state statute, triggered the imposition of the debt. Based on the foregoing reading of Section 523(a)(9), the court finds that the $3,000 surcharge assessed by the Department of Motor Vehicles to Mr. Lugo is not dischargeable in Chapter 7 bankruptcy.

Having decided that Mr. Lugo's debt is not dischargeable, the court does not reach his claims under 11 U.S.C. Section 525 and the Supremacy Clause. Mr. Lugo's reliance on the decisions in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) and *Miller v. Anckaitis,* 436 F.2d 115 (3d Cir.1970), *cert. den.* 403 U.S. 910, 91 S.Ct. 2203, 29 L.Ed.2d 688 (1970) is unavailing, since those decision apply only to dischargeable debts. Likewise, the court does not reach Mr. Lugo's claims under Section 1983 or the bankruptcy court's disposition of discovery matters.

CONCLUSION

For the foregoing reasons, the court affirms Judge Tuohey's order determining the obligation of Mr. Lugo under N.J.S.A. 17:29A–35 to be nondischargeable and dismissing the complaint in its entirety without costs.