**In re Barbara June KISH, Debtor.**

**Barbara June KISH, Plaintiff,**

**v.**

**Peter VERNIERO, in his capacity as Attorney General of New Jersey, C. Richard Kamin, in his capacity as Director of the New Jersey Division of Motor Vehicles, the New Jersey Automobile Full Insurance Underwriting Association, and the New Jersey Market Transition Facility, Defendants.**

Bankruptcy No. 95–36624.
Adv. No. 96–3371TS.

United States Bankruptcy Court,
D. New Jersey.

Jan. 8, 1997.

As Amended Feb. 10, 1997.

Gail Chester, Middlesex County Legal Services, Perth Amboy, New Jersey, for Plaintiff/Debtor.

Marc Krefetz, Office of the Attorney General, Trenton, New Jersey, for Defendants.

Neil Fogarty, Hudson County Legal Services, Jersey City, New Jersey, Amicus Curiae.

### MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on a motion by defendants Peter Verniero, in his capacity as Attorney General of New Jersey, and C. Richard Kamin, in his capacity as Director of the New Jersey Division of Motor Vehicles (hereinafter the "DMV"), the New Jersey Automobile Full Insurance Underwriting Association (hereinafter the "JUA"), and the New Jersey Market Transition Facility (hereinafter the "MTF") (hereinafter collectively the "defendants") to dismiss the complaint in this adversary proceeding. The plaintiff, Barbara June Kish (hereinafter the "debtor"), opposes the motion. At issue is the dischargeability of certain pre-petition motor vehicle surcharges and assessed interest and costs incurred by the debtor. The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (O). Because the parties rely on matters outside the pleadings the court will treat the instant motion as a motion for summary judgment pursuant Fed.R.Bankr.P. 7056. See Fed.R.Bankr.P. 7012(b) (incorporating by reference Fed.R.Civ.P. 12(b)). The following shall constitute the court's findings of fact and conclusions of law.

### I. FINDINGS OF FACT

The following facts are undisputed except as specifically noted to be disputed.

On September 20, 1995 (hereinafter the "petition date"), the debtor filed a petition for relief under chapter 7 of title 11, United States Code (hereinafter the "Bankruptcy Code" or "Code"). The following series of events precipitated the bankruptcy filing and form the basis of the instant dispute.

In or about 1985, the debtor was convicted in the Edison Municipal Court of driving while under the influence of alcohol. As a result, the debtor was fined and her driver's license was suspended. In or about 1986, the debtor was convicted in the South Amboy Municipal Court of driving without insurance. In or about 1987, the debtor was convicted in the Franklin Township Municipal Court of driving with a revoked license. As a result, she received a further license suspension and was assessed a fine. Due to the aforementioned convictions, the DMV assessed the debtor surcharges (hereinafter "merit plan surcharges" or "motor vehicle surcharges") pursuant to N.J.Stat.Ann. 17:29A–35 (hereinafter the "surcharge statute") totaling $6,000, representing $4,500 for the alcohol-related conviction and $1,500 for the other municipal offenses.

At the times of the various convictions, the debtor was employed as a key-to-disk operator and data entry supervisor. Following the

convictions and as a result of her suspended license the debtor was no longer able to drive to work. Consequently, the debtor could not maintain her position and instead accepted a position as a convenience store clerk at a substantially lesser salary. Pursuant to a statutorily-created installment schedule, the debtor paid the various municipal court fines. The debtor was unable, however, to pay the DMV surcharges for which the monthly installments exceeded her net income. As a result, the debtor was assessed additional penalties, interest and costs. In October of 1994, the debtor requested the DMV to permit her to pay the surcharges according to an affordable repayment schedule; however, the DMV refused. The DMV insisted upon repayment according to statutory terms and declined to reinstate the debtor's driver's license until the surcharges and attendant penalties, interest and costs were remitted in full. On or about December 20, 1994, the debtor alleges that the New Jersey Attorney General obtained an ex parte judgment against the debtor in the amount of $7,050, representing $6,000 in surcharges, penalties, interest and costs, and $1,050 in additional costs.[1] Defendants dispute the debtor's characterization of the process as an ex parte judgment. Defendants contend, rather, that after the debtor's repeated failure to pay the consolidated surcharge bill, the Director of the DMV, following statutory procedure, issued a certificate of debt which was recorded in the Office of the Clerk of the Superior Court of New Jersey, Law Division, on December 20, 1994.

On September 20, 1995, with debts totaling in excess of $15,000, including the motor vehicle surcharges, fees and costs, the debtor filed her petition for relief under chapter 7. While the debtor's case was pending, the defendants took no action to collect the surcharge debt or to determine its discharge-

ability. On December 20, 1995 the debtor received a discharge in bankruptcy, and notification of the discharge was sent to all creditors, including the DMV Office of Surcharge and Collections. On May 22, 1996, the DMV restored the debtor's driver's license for a fee. The debtor also alleges that the DMV informed the debtor, both orally and in writing, that she did not owe anything to the DMV. However, on May 17, 1996, five days before restoration of the debtor's license, the DMV had sent the debtor a collection letter demanding repayment of $6,050 in surcharges and costs, plus an unspecified amount of interest relating to the pre-petition incidents. The debtor did not receive the letter until after her license had been restored.

On August 15, 1996, this court issued an order permitting the debtor to reopen her bankruptcy case to file an adversary proceeding to determine the dischargeability of a debt. On August 30, 1996, the debtor filed an adversary complaint against the defendants to determine the dischargeability of the surcharge debt. Specifically, the complaint seeks a declaratory judgment that the motor vehicle surcharges, together with interest and costs, were included in the discharge and a declaratory judgment that the defendants violated Bankruptcy Code § 524 and the court's discharge injunction by sending the collection letter demanding payment of a prepetition debt. The debtor also seeks an injunction against further collection activities by the defendants, an injunction prohibiting the Attorney General of New Jersey from enforcing certain New Jersey surcharge laws, an injunction prohibiting the defendants from discriminating against the debtor by suspending or revoking her driving privileges due to nonpayment of the surcharges, interest and costs, and a declaratory judgment that the defendants are estopped

---

1. In her Brief in Opposition to Motion to Dismiss (hereinafter "Debtor's Brief in Opp."), the debtor offers different figures, stating that the New Jersey Attorney General obtained an ex parte judgment for $6,000 and assessed costs of $1,200. *See* Debtor's Brief in Opp., at 2. Despite the discrepancy between the debtor's complaint and brief, the debtor explains that the DMV claim has been corrected and now totals $5,250 in principal plus $1,050 in assessed statutory costs. *See*

*id.* The defendants agree with these figures, noting that the $750 modification represents a $250 credit per year for the three year surcharge assessed for driving without insurance. *See* Defendants' Brief in Support of Motion to Dismiss (hereinafter "Defendants' Brief"), at 2 n. *; Defendants' Reply Brief, at 6. These modified figures will therefore be accepted by the court as correct for the purposes of this matter.

from any action to collect the pre-petition surcharge debt and that certain provisions of the New Jersey surcharge statute conflict with the Bankruptcy Code and are therefore unconstitutional per the Supremacy Clause. The defendants did not file an answer, and instead on September 23, 1996, filed a motion seeking to dismiss the adversary complaint for failure to state a cause of action upon which relief could be granted. On October 25, 1996, the Hudson County Legal Services Corporation filed an application requesting permission to appear as amicus curiae (hereinafter "amicus"). On November 12, 1996, over the defendants' objection, the court granted the application.

### Defendants' Position

Defendants argue that dismissal of the debtor's complaint is warranted because the motor vehicle surcharge debt falls within two of the exceptions to discharge enumerated in Bankruptcy Code § 523(a). First, the defendants contend that the surcharges are properly categorized as taxes and are thus nondischargeable pursuant to Code §§ 523(a)(1). The defendants maintain that the surcharges were created and imposed pursuant to the legislature's taxing power and for the legitimate state purpose of requiring high risk drivers to bear the financial responsibility of their hazardous conduct. Alternatively, the defendants contend that the surcharges are a civil penalty and are thus nondischargeable pursuant to Code § 523(a)(7). Defendants rely on two opinions issued in the district of New Jersey finding motor vehicle surcharges civil penalties payable to and for the benefit of a governmental unit and holding the debtor's obligation to pay the debts nondischargeable under Code § 523(a)(7).

Further, the defendants maintain that the New Jersey surcharge statute is constitutional as applied because it satisfies the elements of due process. Specifically, the defendants assert that they satisfied due process by providing the debtor with written notice of the proposed filing of the certificate of debt ten days before the filing. The defendants argue that the statutory collection scheme providing for the docketing of a certificate of debt, granting the right to collect on the certificate as if it were a judgment, and providing for administrative or appellate review is the same as that provided for in other statutes which the New Jersey Supreme Court upheld against constitutional attack.

The defendants argue further that the debtor is not entitled to any of the requested equitable relief because she has unclean hands. The defendants also contend that the debtor's estoppel argument is without merit because the debtor has not provided any documentary evidence that the DMV informed her post-discharge that she did not owe the DMV any debt.

### The Debtor's Position

The debtor argues that the motor vehicle surcharges were discharged on December 20, 1995 by the court's discharge order of that date. The debtor contends that the surcharge debt does not fall within any exception to dischargeability listed in Code § 523(a). Specifically, the debtor argues that the surcharges are not taxes within the meaning of § 523(a)(1). The debtor asserts that no New Jersey statute characterizes the surcharges as taxes. The debtor also asserts that the DMV did not characterize the surcharges as taxes in its correspondence to the debtor. The debtor also maintains that the surcharges are not a tax because the New Jersey Division of Taxation does not collect the payment and provides no tax return form on which a payor may report liability for surcharges. Further, the debtor contends that while tax receipts are deposited by the state treasurer into New Jersey's General Fund, surcharges, after deducting a collection fee, are segregated and used solely to satisfy the obligations of the JUA and MTF. Moreover, the debtor contends that even if the surcharges were deemed taxes, her debt would still be dischargeable because it was incurred more than three years before the petition date and thus falls outside the scope of Code § 507(a)(8)(E) as referenced by § 523(a)(1).

With regard to Code § 523(a)(7), the debtor argues that the surcharges are not the type of fines or penalties that Congress intended to fall within that provision. Specifically, the debtor contends that Congress intended to except from discharge penalties intended to punish, deter or rehabilitate of-

fenders. The debtor argues that surcharges are not punitive in nature nor an exercise of the state police power, but rather part of a fund raising scheme for the JUA. Thus while the debtor recognizes that surcharges may serve a legitimate public purpose, the debtor contends that they do not serve the purpose behind § 523(a)(7). The debtor criticizes that the state has been inconsistent in its characterization of surcharges, vacillating between characterizing them as insurance premiums, taxes and penalties. The debtor argues that the surcharges are sui generis creatures of the state legislature which, if nondischargeable, are inimical to the fresh start goal of the Bankruptcy Code. The debtor argues that Congress in enacting § 523(a)(7) did not intend such a result by excepting surcharges from discharge and the courts should not craft such an exception.

Next, the debtor argues that the surcharges are dischargeable because even assuming *arguendo* that they are fines or penalties, they are not paid for the benefit of a governmental unit. Specifically, the debtor contends that because only fines or penalties payable to and for the benefit of a governmental unit are nondischargeable under Code § 523(a)(7), the surcharges which are paid for the benefit of the JUA do not fall within this exception. The debtor argues that while the DMV is indisputably a state agency, and hence a governmental unit, the JUA is not. The debtor reasons that the JUA, before expiring, underwrote auto insurance, a proprietary, not governmental function. The debtor further reasons that the JUA was governed by a board of directors comprised of insurance brokers, agents and representatives and, like its successor the MTF, was funded by sources independent of the government. The debtor also contends that the State of New Jersey made a concerted effort to separate itself from the JUA and MTF, and while New Jersey facilitated revenue raising for the entities by promulgating surcharges and authorizing bond sales, the state refused liability for their debts. The debtor also maintains that the JUA and the MTF could sue and be sued in their own names and were not subject to the New Jersey Tort Claims Act, state competitive bidding procedures, or the New Jersey Ad-

ministrative Procedure Act. The debtor asserts that employees of the JUA and MTF were not state employees and not covered by the state civil service laws. Further, the debtor asserts that the JUA and MTF paid taxes on their insurance premiums pursuant to the same statutory scheme used to tax private insurance companies. Lastly, the debtor maintains that law suits against the JUA and MTF were filed in New Jersey Superior Court where the JUA and MTF were represented by private counsel, not the New Jersey Attorney General. The debtor thus concludes that the JUA and MTF were essentially private insurance companies which did not exercise any governmental function.

The debtor also argues that the statutory costs or fees assessed in addition to the surcharges are nondischargeable under § 523(a)(7) regardless of the nature of the surcharges themselves. The debtor reasons that the costs represent compensation for actual pecuniary loss and are used to defray the DMV's administrative collection expenses, debts which the Code recognizes as dischargeable.

Lastly, the debtor argues that defendants are estopped from collecting the surcharges from her because the DMV restored the debtor's driver's license following her discharge and advised her that she did not owe any debt to the DMV.

### The Position of the Amicus

The amicus argues that because the exceptions to discharge listed in Code § 523(a) must be narrowly construed in favor of dischargeability, the court may not by judicial fiat craft an exception not specifically created by Congress. Advancing the same arguments as the debtor, the amicus contends that the surcharges do not satisfy any of the criteria of Code §§ 523(a)(7) or 523(a)(1). With regard to § 523(a)(7), the amicus argues that the surcharges are compensation for actual pecuniary losses by the JUA and DMV, are not punitive in nature, and are not for the benefit of any governmental unit. First, the amicus contends that since their inception the purpose of the surcharges has been to recoup JUA losses. The amicus

further argues that the JUA was a nonprofit entity created outside the state government, run by fifteen for-profit insurance companies as servicing carriers, and created as a vehicle for compensating actual pecuniary losses of both the JUA and victims of automobile accidents. Next, the amicus argues that the surcharges are not punitive in nature as are fines and penalties. The amicus further argues that the defendants have conceded the allegations in the complaint that the JUA may not be characterized as a governmental unit because it was not a government entity and did not perform any governmental function. The amicus argues instead that the JUA was an autonomous association of automobile insurers engaged in the proprietary function of selling automobile insurance. Moreover, the amicus contends that the nongovernmental nature of the JUA and MTF is further established by the state's disavowal of liability for their debts, the segregation of collected surcharges in a separate account, the ability of the JUA and MTF to sue and be sued, their representation by private counsel, taxation of the JUA and MTF as private insurance companies, the treatment of the JUA and MTF as private entities under state law and substantial funding of the entities by sources independent of the state. The amicus also contends that the state's involvement in liquidating the JUA upon its demise did not convert the JUA into a government entity but was rather necessitated by the inability of the JUA as an insurance company to file bankruptcy and the wish to avoid the panic that might ensue upon the sudden disappearance of an insurer of such a large percentage of the state population.

With regard to § 523(a)(1), the amicus argues that the defendants have presented no evidence to support a finding that the surcharges should be characterized as priority or excise taxes within the scope of § 523(a)(1) or that the surcharges were remitted to a government unit. The amicus contends that the DMV serves as a collection agent for the JUA and MTF who receive the majority of the funds. The amicus further argues that even if the surcharges could be characterized as excise taxes, they were imposed for transactions occurring outside the statutory period. The amicus contends that the motor vehicle surcharges are debts unique to New Jersey which are not insurance premiums but are added to premiums and enforced by entry of a judgment and suspension of driving privileges in the event of nonpayment. Accordingly, the amicus argues that due to the unique and complex nature of surcharges and the court's obligation to construe narrowly the exceptions to discharge, the court may not act contrary to Congressional intent by declaring the surcharges nondischargeable where an express statutory provision has not been created.

Lastly, the amicus argues that the New Jersey surcharge statute conflicts with the discharge and fresh start concepts of the Bankruptcy Code and is therefore unconstitutional and preempted by the Code. Specifically, the amicus contends that by attempting to collect the surcharges from the debtor, the defendants violated Code § 525(a), which prohibits state discrimination against a debtor who has not paid a debt discharged in bankruptcy, Code § 524, which operates to enjoin the commencement or continuation of an action to collect a discharged debt, and 42 U.S.C. § 1983, which protects against state-sanctioned violations of the Constitution and federal statutory law.

## CONCLUSIONS OF LAW

### A. Summary Judgment Standard

A party seeking summary judgment bears the initial burden of demonstrating that the pleadings, depositions, answers, and affidavits, if any, create no genuine issues of material fact, and that the movant is therefore entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1988); Fed.R.Bankr.P. 7056 (incorporating by reference Fed.R.Civ.P. 56). Where the moving party satisfies this burden, the burden then shifts to the non-moving party to provide specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). A court considering a motion for summary judgment does not resolve factual disputes but must view all facts

and inferences therefrom in the light most favorable to the non-moving party. *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1362 n. 1 (3d Cir.1996). There is no genuine triable issue unless there is sufficient evidence that would permit a finding in favor of the non-moving party. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11. In the instant case, the debtor has presented insufficient evidence to establish any genuine issue for trial. Accordingly, summary judgment in favor of the defendants is granted for the reasons set forth herein.

### B. The JUA

Before addressing the merits of the parties' claims, a brief review of the history and nature of the JUA and the merit rating plan surcharges is appropriate. The JUA was established in 1983 by the New Jersey Automobile Full Insurance Availability Act as an unincorporated, non-profit association of automobile insurers created to provide market rate insurance to drivers who were unable to pay the high cost of automobile insurance. N.J.Stat.Ann. 17:30E–1 *et seq.* As a condition of doing business within the state, membership in the JUA was mandatory for all insurers. N.J.Stat.Ann. 17:30E–4. The JUA was run by a board of directors appointed by various state government officials. *Id.* The board was required to adopt a plan of operation subject to the review and approval of the Commissioner of Insurance. *Id.* The plan provided that the JUA would accomplish its objectives by engaging servicing carriers to issue insurance policies on behalf of the JUA in exchange for compensation. N.J.Stat.Ann. 17:30E–6a, 7e. The plan could be amended at any time by either the Insurance Commissioner or the board with the Commissioner's approval. N.J.Stat.Ann. 17:30E–6b,c,d.

Due to mismanagement by the servicing carriers, the JUA did not achieve its goals. *In re Comm'r of Ins.'s Certification of Amendment to the N.J. Auto. Full Ins. Underwriting Ass'n*, 254 N.J.Super. 620, 624, 604 A.2d 172, 174 (App.Div.1992). Thus, effective March 12, 1990, the state legislature enacted the Fair Automobile Insurance Reform Act of 1990, N.J.Stat.Ann. 17:33B–1 *et seq.* (hereinafter the "Reform Act"), which was intended to reform the financially distraught and mismanaged insurance industry over time by dissolving the JUA and creating its temporary successor, the MTF. *In re Comm'r of Ins.'s Certification of Amendment*, 254 N.J.Super. at 625, 604 A.2d at 175. Pursuant to the Reform Act, the JUA was prohibited from issuing policies after September 30, 1990 and an insolvency trustee was appointed to terminate it. *Id.* (citations omitted).

During its operation, the JUA derived income from premiums and investments. N.J.Stat.Ann. 17:30E–8a. Additionally, because the JUA insured high risk drivers at market rates, premium income and investments alone were insufficient to fund the JUA; thus, surcharges for certain motor vehicle offenses and residual market equalization charges were imposed to subsidize JUA income. *See id.; In re Comm'r of Ins.'s March 24, 1992 Order*, 132 N.J. 209, 213, 624 A.2d 565, 567 (Sup.Ct.1993) (citations omitted). Specifically, merit rating surcharges were imposed and levied annually on drivers who committed certain motor vehicle violations and those who accumulated six or more points within the preceding three years for certain other offenses. N.J.Stat.Ann. 17:29A–35b. Under the surcharge scheme, all moneys were billed and collected by the DMV, who retained the lesser of 10% or the actual cost of collection. *Id.* The remainder was remitted to the JUA until October 31, 1991. *Id.* Thereafter the moneys were remitted to the New Jersey Automobile Insurance Guaranty Fund (hereinafter the "Guaranty Fund"), a separate fund created within the state treasury by the Reform Act to satisfy existing and anticipated JUA obligations, and then to the MTF Revenue Fund to satisfy MTF obligations. *Id.* Following satisfaction of all JUA and MTF debts, moneys collected under the surcharge statute were, subject to and dependent upon appropriation by the state legislature, to be distributed to the New Jersey Property–Liability Insurance Guaranty Association for the satisfaction of loans made by that association to the Guaranty Fund. *Id.*

### C. Dischargeability of the Surcharges: § 523(a)(7)

With this background, the court turns first to the defendants' contention that the sur-

charges are nondischargeable pursuant to Code § 523(a)(7). That section provides in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty ...

11 U.S.C. § 523(a)(7). To hold, therefore, that a debt is nondischargeable pursuant to subsection (a)(7), the court must find that the following five elements have been established: (1) the surcharge is a debt; (2) for a fine, penalty or forfeiture; (3) payable to a governmental unit; (4) for the benefit of a governmental unit; and (5) not as compensation for actual pecuniary loss, other than a tax penalty. *In re Kent*, 190 B.R. 196, 199 (Bankr.D.N.J.1995). This court has previously held and the parties do not dispute that merit rating plan surcharges are debts within the meaning of Bankruptcy Code § 101(11). *See In re Bill*, 90 B.R. 651, 655 (Bankr. D.N.J.1988); *accord Kent*, 190 B.R. at 199 (citing *Lugo v. Paulsen*, 886 F.2d 602, 606 (3d Cir.1989) ("That a motor vehicle surcharge constitutes a debt ... has been clearly established."); *Christensen v. New Jersey Div. of Motor Vehicles (In re Christensen)*, 95 B.R. 886, 895 (Bankr.D.N.J.1988) (holding same). Similarly, the parties do not dispute that the surcharges are payable to a governmental unit. *See Kent*, 190 B.R. at 199 ("The obligation is collected by and payable directly to the DMV, which is undeniably a governmental unit."). The parties do, however, dispute the remaining three elements which shall be addressed in turn.

### 1. Fine, Penalty or Forfeiture

The debtor and amicus contend that surcharges which are imposed to supplement the JUA may not be characterized as nondischargeable fines or penalties because they are not punitive in nature. The debtor and amicus do not dispute the defendants' assertion that the surcharges are penalties, but contend rather that the surcharges are not the type of penalties Congress intended to

except from discharge. Instead, they argue that only penalties intended to punish, deter or rehabilitate fall within the scope of § 523(a)(7). Neither the plain language of the statute nor case law, however, compels or supports such a restrictive interpretation. The language of subsection (a)(7) expressly excepts from discharge "fines, penalties or forfeitures." 11 U.S.C. § 523(a)(7). While it is well settled that punitive penalties imposed for violations of criminal laws fall within the coverage of § 523(a)(7), *see, e.g., Kelly v. Robinson*, 479 U.S. 36, 50–52, 107 S.Ct. 353, 361–62, 93 L.Ed.2d 216 (1986), the parties have cited no authority for the proposition that civil and remedial penalties are excluded from the statute's coverage. Though the court is mindful of the principle that exceptions to discharge must be narrowly construed, *see Insurance Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir. 1995), absent such restrictive language, the court declines to read such a limitation into the statute. *See In re Lugo*, 94 B.R. 335, 342 (D.N.J.1989) (declining to restrict discharge exception where neither statutory language nor legislative history clearly expressed such intent).

Though the Third Circuit has not expressly ruled on the matter, courts within this district that have recently considered the dischargeability of motor vehicle surcharges have expressly held that the surcharges are civil penalties within the scope of Code § 523(a)(7). *See, e.g., Kent*, 190 B.R. at 202 ("We conclude that a motor vehicle surcharge constitutes a 'penalty' for purposes of section 523(a)(7)."); *Curtin v. New Jersey Div. of Motor Vehicles (In re Curtin)*, Ch. 7 Case No. 95–28844, Adv. No. 96–2145, slip op. at 5 (D.N.J. Sept. 4, 1996) ("[T]he New Jersey motor vehicles surcharge, an assessment imposed upon drivers for violating certain motor vehicles laws, constitutes a 'penalty' within the meaning of section 523(a)(7)."); *see also In re Bill*, 90 B.R. 651, 655 (Bankr. D.N.J.1988) (finding that merit rating plan surcharge is "a penalty imposed to supplement the JUA"); *Clark v. New Jersey Div. of Motor Vehicles*, 211 N.J.Super. 708, 711, 512 A.2d 588 (App.Div.1986) (labeling surcharges "civil penalties" reasoning that imposition of motor vehicle surcharges had remedial and

civil purpose and effect). The *Kent* court, in so holding, considered the breadth of Code § 523(a)(7) in light of the recent amendment to § 523(a)(9) which eliminated motor vehicle surcharges from its coverage. *See Kent,* 190 B.R. at 199. Examining the nature and evolution of the JUA, the court instructed that the motor vehicle surcharge scheme was designed to place the financial burden for the cost of insuring high risk drivers on those responsible for the increased cost of insurance. *See id.,* 190 B.R. at 200–01. The court then defined penalty as a sum of money exacted as punishment for the commission of a prohibited act, and reasoned that surcharges which were mandatorily imposed as a consequence of certain serious motor vehicle offenses, fell within the definition and thus within the breadth of subsection (a)(7). *See id.* at 202. This court agrees with the reasoning in *Kent* and accordingly finds that the surcharges imposed against the debtor in the instant case as a consequence of ·the debtor's violations of certain motor vehicles laws are civil penalties within the meaning of Code § 523(a)(7).

## 2. For the Benefit of a Governmental Unit

■ Pursuant to the surcharge statute, at least 90% of the collected surcharge bill is remitted to the JUA, while the DMV retains the remaining portion to cover administrative expenses. N.J.Stat.Ann. 17:29A–35(b)(2). The debtor and amicus argue that the JUA, for whose benefit the surcharges are paid, is not a governmental unit because it performed a proprietary function, received private funding, was operated by members of the private insurance industry, was not subject to many of the regulations imposed on government agencies or bodies, and was responsible for its own debts. In opposition, the defendants rely on *Kent* and *Curtin* for the proposition that the JUA is a governmental unit within the meaning of Code §§ 101(27) and 523(a)(7).

This court finds the *Kent* opinion particularly instructive and well reasoned and is thus guided by its analysis. In *Kent,* the court reexamined the issue previously addressed within this district of whether motor vehicle surcharges are payable for the benefit of a governmental unit. *See id.* at 203. The court explored in depth the nature of the JUA and relevant case law to determine whether the JUA and MTF, whose obligations were satisfied by collection of surcharges, were governmental units of New Jersey. *See Kent,* 190 B.R. at 203–06. As the *Kent* court initially noted, the Bankruptcy Code defines "governmental unit" as:

> United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States . . ., a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government

*Id.* at 203 (citing 11 U.S.C. § 101(27)). Looking to the legislative history of that provision, the *Kent* court instructed that state creation, a governmental purpose and active interaction between the body and the state are three characteristics of an instrumentality of the state or governmental unit. *Id.* at 204. Looking to relevant case law, the *Kent* court gleaned the following list of factors to guide a determination of whether an entity qualifies as a governmental unit: (1) whether it was created by private or governmental action; (2) its purpose and function; (3) the degree of its autonomy or subjection to state operation; (4) whether it may sue and be sued, pay its own debts, or receive immunity; and (5) the procedures for its dissolution. *Id.* (*citing Kovats v. Rutgers,* 822 F.2d 1303 (3d Cir.1987)).

Applying these factors to the JUA and MTF, the court found that "[a] coincidence of characteristics of both the JUA and MTF favors designation of both entities as instrumentalities of the State." *Id.* In so finding, the court disagreed with part of the district court's decision in *Lugo v. Paulsen,* 94 B.R. 335 (D.N.J.), *aff'd,* 886 F.2d 602 (3d Cir. 1989), in which the court stated that the JUA was not a governmental unit. *Kent,* 190 B.R. at 203. The *Kent* court noted that the statement was merely dictum, and that the circuit's affirmance of *Lugo* was based solely on § 523(a)(9) grounds. The court then observed that both the JUA and MTF were state created bodies and that the scheme of

surcharges was imposed to insure high risk motorists at market rates while reducing the insurance costs for other drivers. *Id.* at 204–05. Further, the court noted that membership in the JUA and its successor was required as a condition of doing insurance business within the state. *Id.* (citing N.J.Stat. Ann. 17:30E–4; N.J.Stat.Ann. 17:33B–11). The court also noted that the JUA was governed by a non-compensated board of directors appointed by various state officials and that its plan of operation was subject to the approval and review of the state Insurance Commissioner. *Id.* (citing N.J.Stat. Ann. 17:30E–5, 17:30E–6). The court noted the extensive control of the Insurance Commissioner over the MTF as well. *Id.* (citing N.J.Stat.Ann. 17:33B–11). With regard to the rights and liabilities of the JUA and MTF, the court observed that both entities had the power to execute contracts, sue and be sued, and that all claims against the JUA would be its financial responsibility, not liabilities of the state. *Id.* (citing N.J.Stat.Ann. 17:30E–7(a) and (b)). Lastly, the court noted that both the JUA and MTF were statutorily terminated. *Id.* (citing N.J.Stat.Ann. 17:33B–11(c)). In summary, the court stated:

> [B]oth the JUA and the MTF were created by the legislature for governmental purposes serving the public interest. Both entities have been funded primarily by government imposed surcharges. With respect to both entities, membership by insurers is mandated by the government as a condition of doing business as an insurer in the State of New Jersey. The operations of the entities have been largely controlled by the government, and there is no private liability on the part of the individual insurers who are members of the entities. We readily conclude that both the JUA and the MTF constitute "governmental units" within the meaning of § 523(a)(7).
>
> .... Our conclusion that the JUA qualifies as a governmental unit is supported by

the characterization of the JUA by the New Jersey Superior Court, Appellate Division, as an "instrumentality of the State." *Id.* at 205–06.

The *Curtin* court, addressing the same issue, adopted the *Kent* analysis and similarly concluded that the JUA is a governmental unit. *See Curtin,* Ch. 7 Case No. 95–28844, Adv. No. 96–2145, slip op. at 12. Such conclusion is not inconsistent with case law addressing the nature of the JUA. *See, e.g., In re Order of Comm'r of Ins. Deferring Certain Claim Payments,* 256 N.J.Super. 553, 561–62, 607 A.2d 992, 996 (App.Div.1992) ("The JUA is an instrumentality of the State having been created, funded and terminated by statute.").[2] This court, like the *Curtin* court, is persuaded by the *Kent* analysis and adopts its factors and reasoning. Accordingly, the court holds that the JUA, for whose benefit the surcharges were collected, is a governmental unit within the meaning of Code § 523(a)(7).

### 3. Compensation for Actual Pecuniary Loss

The debtor argues that the costs and fees assessed in addition to the surcharges do not fall within the scope of § 523(a)(7) and are dischargeable as compensation for the actual pecuniary loss of the DMV. The amicus argues that the surcharges, costs and fees are all dischargeable because the scheme was imposed to compensate the losses of both the JUA and victims of auto accidents. The relevant portion of the surcharge statute reads as follows:

> All moneys collectible under this subsection b. shall be billed and collected by the Division of Motor Vehicles. Of the moneys collected: 10%, or the actual cost of administering the collection of the surcharge, whichever is less, shall be retained by the Division of Motor Vehicles ...; five percent, or the actual cost of administering the cancellation notification system...., whichever is less, shall be retained by the

---

**2.** Nor is it inconsistent with this court's finding in *In re Bill,* 90 B.R. 651 (Bankr.D.N.J.1988) that "[t]he JUA is not a state agency" because, as the legislative history of Code § 101(27) makes clear, the definition of governmental unit is not limited to state agencies but includes departments and

instrumentalities of the state as well. *See Kent,* 190 B.R. at 204 (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 311 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 24 (1978); 1978 U.S.C.C.A.N. 5787, 5810, 6268).

Division of Motor Vehicles ... and the remainder shall be remitted to the New Jersey Full Automobile Insurance Underwriting Association ...

N.J.Stat.Ann. 17:29A–35b(2). The plain language of the statute makes clear that at least 10% of the surcharge bill or the actual collection fees incurred in recovering unpaid surcharges are to be paid to the DMV for its costs of administering the collection of surcharges and the cancellation notification system. The remainder are to be remitted to the JUA as part of the scheme of assuring market rate insurance to all motorists. Because Code § 523(a)(7) excludes from its coverage debts payable to and for the benefit of a governmental unit as compensation for actual pecuniary loss, the debtor's obligation to pay that portion of costs and fees retained by the DMV to cover administrative expenses is dischargeable. *See* 11 U.S.C. § 523(a)(7); *Kent,* 190 B.R. at 206 (holding that debtor's obligation to pay portion of debt representing administrative expenses of collection was dischargeable); *Curtin,* Ch. 7 Case No. 95–28844, Adv. No. 96–2145, slip op. at 12 ("[T]he debtor is not responsible for the administrative expenses of collection charged by the DMV, because a debt that is 'compensation for actual pecuniary loss' is dischargeable under section 523(a)(7) of the Bankruptcy Code.").

It not being disputed that surcharges are debts payable to a governmental unit and having found that surcharges are civil penalties payable for the benefit of a governmental unit and not compensation for actual pecuniary loss, the court finds as a matter of law that the motor vehicle surcharges imposed against the debtor in the instant case, net of the collection costs, are nondischargeable pursuant to Bankruptcy Code § 523(a)(7). Accordingly, summary judgment is granted in favor of the defendants on the issue of nondischargeability.

Having found the surcharge debt, net of administrative costs, nondischargeable under subsection (a)(7), the court need not address the parties' arguments with regard to subsection (a)(1). For the same reason, the court need not consider the debtor and amicus' §§ 524(a), 525, Supremacy Clause and § 1983 arguments. *See* 11 U.S.C. § 524(a) (enjoining collection from debtor of discharged debts only); *Johnson v. Edinboro State College,* 728 F.2d 163, 165 (3d Cir.1984); (holding that § 525 applies only where the debt in question is dischargeable); *In re Bill,* 90 B.R. 651, 657 (Bankr.D.N.J.1988) (holding § 525 applies only where debt dischargeable); *In re Lugo,* 94 B.R. at 343 (noting that determination of nondischargeability obviated necessity of addressing § 525, Supremacy Clause and § 1983 claims). The court similarly finds defendants' unclean hands and estoppel arguments moot.

## CONCLUSION

For the foregoing reasons, summary judgment holding the debtor's surcharges, net of administrative costs, nondischargeable is granted in favor of the defendants. Defendants are to submit an order within ten days under D.N.J.Bankr.Ct.R. 4(c).