In re Barbara June KISH, Debtor.

Barbara June KISH, Plaintiff/Appellant,

v.

Peter VERNIERO in his capacity as Attorney General of New Jersey, et al., Defendants/Respondents.

Civil No. 97–1405(GEB).

United States District Court, D. New Jersey.

Aug. 18, 1997.

Gail Weirauch Chester, Middlesex County Legal Services Corp., Perth Amboy, NJ, for appellant.

Marc Alan Krefetz, State of New Jersey Dept. of Law and Public Safety, Division of Law, Trenton, NJ, for appellees.

## MEMORANDUM OPINION

BROWN, District Judge.

This matter comes before the Court on the appeal of Barbara June Kish ("the debtor" or "appellant") of the Bankruptcy Court's February 4, 1997 Final Order ("February 4th Order"), wherein the Bankruptcy Court entered summary judgment in favor of defendants pursuant to FED. R. CIV. P. 56. For the reasons set forth in this Memorandum Opinion, this Court will reverse in part, vacate in part, and remand for proceedings consistent with this Memorandum Opinion.

## I. BACKGROUND

Between 1985 and 1987, the debtor was convicted of three separate motor vehicle infractions: driving under the influence of alcohol, driving without insurance, and driving with a revoked license. *In re Kish*, 204 B.R. 122, 123 (Bankr.D.N.J.1997). As a result, she received a further license suspension and was assessed a fine. *Id.* The DMV also assessed motor vehicle surcharges totaling $6000 ($4500 for the alcohol-related conviction and $1,500 for the other municipal offenses) pursuant to N.J.S.A. 17:29A–35. *Id.*

Following the convictions, and as a result of her suspended licence, the debtor could no longer drive to work. *Id.* at 124. Consequently, the debtor could not maintain her position as a key-to-disk operator and data entry supervisor and instead accepted a position as a convenience store clerk at a substantially reduced salary. *Id.* This, in turn, resulted in the debtor's inability to pay her surcharges and the imposition of additional penalties, interest and costs due to her failure to pay the original amount. *Id.* Although the debtor attempted to repay the surcharges on an installment basis, the DMV refused to adjust the repayment schedule and declined to reinstate her driver's license until the surcharges and attendant penalties, interest and costs were remitted in full. *Id.*

On September 20, 1995, with debts totaling in excess of $15,000, including the motor vehicle surcharges, fees and costs, the debtor filed her petition for relief under Chapter 7 of the Bankruptcy Code. *Id.* During the pendency of her bankruptcy case, the DMV took no action to collect the surcharge debt or to determine its dischargeability. *Id.* On December 20, 1995, the debtor received her discharge, and all creditors, including the DMV Office of Surcharges and Collections, were notified. *Id.*

On May 22, 1996, the DMV restored the debtor's driver's license for a fee. *Id.* According to the debtor, the DMV also advised her, both orally and in writing, that she did not owe anything to the DMV. *Id.* Five days before restoring her license, however, the DMV sent the debtor a collection letter demanding repayment of $6,050 in surcharges and costs, plus an unspecified amount of interest relating to the pre-petition incidents. *Id.* The debtor did not receive the letter until after her license had been restored. *Id.*

On August 15, 1996, the Bankruptcy Court entered an Order permitting the debtor to reopen her bankruptcy case to file an adversary proceeding to determine the dischargeability of a debt. Shortly thereafter, on August 30, 1996, the debtor filed an Adversary Complaint against defendants, Peter Verniero, in his capacity as Attorney General of New Jersey, the Division of Motor Vehicles ("DMV"), C. Richard Kamin, in his capacity as Director of DMV, the New Jersey Automobile Full Insurance Underwriting Association ("JUA"), and the New Jersey Market Transition Facility ("MTF"). The debtor's Adversary Complaint seeks the following relief:

1. A declaratory judgment that her insurance surcharges, together with interest and costs, were included in her Chapter 7 discharge;

2. A declaratory judgment that, by sending a collection letter after the debtor's discharge, defendants Verniero, Kamin and the DMV violated Bankruptcy Code § 524 and the Bankruptcy Court's December 20, 1995 discharge injunction;

3. An injunction pursuant to 11 U.S.C. § 525(a) prohibiting defendant Kamin and

DMV employees from discriminating against her by suspending or revoking her driving privileges due to nonpayment of the surcharges, interest and costs;

4. An injunction prohibiting defendants from further collection activities against any person receiving a discharge in bankruptcy;

5. A declaratory judgment that N.J.S.A. 17:29A–35 conflicts with 11 U.S.C. §§ 523, 524, 525, and is therefore invalid under the Supremacy Clause of the Constitution of the United States when applied to condition driving privileges upon payment of insurance surcharges which have been discharged in bankruptcy;

6. A declaratory judgment that defendants Verniero, Kamin and the DMV are estopped from any action to collect the pre-petition surcharge debt.

See Adversary Complaint to Determine the Dischargeability of a Debt ("Adv.Compl.") ¶¶ 86–95.

On February 4, 1997, the Bankruptcy Court entered an Order granting defendants summary judgment. The court entered summary judgment after: (1) converting *sua sponte* defendants' Rule 12(b)(6) motion into a Rule 56 motion; (2) determining that the surcharge debt, net of administrative expenses, is nondischargeable under 11 U.S.C. § 523(a)(7); and (3) finding that the debtor's remaining claims were moot in light of the court's dischargeability ruling.

On February 10, 1997, the debtor filed a Notice of Appeal. She contends that the Bankruptcy Court erred as a matter of law: (1) by converting defendants' Rule 12(b)(6) motion without providing sufficient notice to the parties; and (2) by finding that the surcharge bills at issue constitute a "fine, penalty, or forfeiture to and for the benefit of a governmental unit." *See* Appellant's Brief at 1.

On April 25, 1997, after reviewing the parties' submissions for this appeal, this Court requested that the parties submit supplemental briefs regarding the impact of the Su-

preme Court's recent decision in *Seminole Tribe of Florida v. Florida*, —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) on this appeal.[1] The Court also notified the Attorney General of the United States of a possible challenge to 11 U.S.C. § 106(a) pursuant to 28 U.S.C. § 2403 and Rule 24.1 of the General Rules for the District of New Jersey. To date, however, the Court has not received any response from the United States indicating an intention to intervene.

## II. DISCUSSION

### A. STANDARD OF REVIEW

Bankruptcy Rule 8013 provides in pertinent part: "On an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact will be upheld unless clearly erroneous." 11 U.S.C.A. Rule 8013 (West Supp.1995); *Resyn Corp. v. United States*, 851 F.2d 660, 664 (3d Cir.1988). In defining the term "clearly erroneous" the United States Supreme Court has stated that "[a] finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conclusion that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). A bankruptcy court's conclusions of law are subject to plenary review. *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988). Where mixed questions of law and fact are presented, the appropriate standard must be applied to each component. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir.1989).

### B. SUBJECT MATTER JURISDICTION OVER THE DMV

As noted above, on April 25, 1997, this Court asked the parties to submit supplemental briefs regarding the possible impact

---

**1.** In light of this Court's request for supplemental briefs on the *Seminole Tribe* issue, we entered an Order on May 20, 1997 denying the application of the Hudson County Legal Services Corpora-

tion ("HCLSC") to participate as *amicus curiae* because HCLSC's proposed submission did not consider this threshold jurisdictional issue.

*Seminole Tribe* may have on this appeal.[2] Appellant responded by arguing that consideration of the instant appeal does not implicate the Eleventh Amendment because: (1) the Eleventh Amendment was not raised below by either the parties or the Bankruptcy Court and should not be raised for the first time on appeal; (2) the JUA and the MTF are the only real parties in interest remaining in this appeal and, thus, they are not entitled to Eleventh Amendment immunity because they are not arms of the State of New Jersey; and (3) appellant is seeking only declaratory and injunctive relief, rather than monetary relief from the treasury of the State of New Jersey. Appellant also contends that, even assuming that the Eleventh Amendment is somehow implicated in this matter, the DMV—the only arm of the State—waived its immunity because it "made a general appearance in this action, never objected to the [Bankruptcy] Court's jurisdiction, never claimed any defense of sovereign immunity, and [was] successful in winning a summary judgment in [its] favor on the merits." *See* Appellant's Supplemental Brief ("App.Supp.Br.") at 11. Finally, appellant asserts that Congress effectively abrogated the States' Eleventh Amendment immunity by enacting 11 U.S.C. § 106(a) pursuant to § 5 of the Fourteenth Amendment. For the following reasons, each of these arguments must fail.

**2.** *In Seminole Tribe,* the Supreme Court held that Congress cannot exercise its Indian Commerce Clause power, or any other of its Article I powers, to abrogate a state's Eleventh Amendment immunity from suit in federal court, thereby overruling the contrary precedent of *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989).

**3.** Of course, even assuming that this Court was not *required* to raise the Eleventh Amendment *sua sponte,* we would nevertheless exercise our discretion to do so. *See Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974) ("[T]he Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar that may be raised *sua sponte* at any stage of the proceedings."); *see also Wilson-Jones,* 99 F.3d at 206 (noting that prior to *Seminole Tribe,* "[c]ircuit courts generally [held] ... that a federal court may or may not raise the issue of a state's immunity in its discretion.") (citations omitted).

### 1. Eleventh Amendment May Be Raised Sua Sponte on Appeal

Appellant first argues that this Court should not consider whether the Eleventh Amendment impacts on the instant appeal because neither the parties nor the Bankruptcy Court raised this issue below. Appellant is wrong. This Court recently observed that the Eleventh Amendment, in the wake of the Supreme Court's decision in *Seminole Tribe,* "is jurisdictional in the same sense as the complete diversity requirement, or the well-pleaded complaint rule." *In re Fennelly,* 212 B.R. 61 (D.N.J.1997) (GEB) (quoting *Wilson-Jones v. Caviness,* 99 F.3d 203, 206 (6th Cir.1996), *amended on denial of reh'g,* 107 F.3d 358 (6th Cir.1997)). Thus, if not raised by the parties, a court is required to determine on its own motion whether Congress has effectively abrogated the States' Eleventh Amendment immunity. *See id.* (citing *Wilson-Jones,* 99 F.3d at 206). Accordingly, appellant's argument must fail[3]

### 2. The DMV Is a Real Party in Interest

Next, appellant contends that the Eleventh Amendment need not be considered in this appeal because the JUA and the MTF are the only remaining real parties in interest in this suit and they are not arms of the State for Eleventh Amendment purposes.[4]

**4.** The JUA was established in 1983 by the New Jersey Automobile Full Insurance Availability Act as an unincorporated, non-profit association of automobile insurers created to provide market rate insurance to drivers who were unable to pay the high cost of automobile insurance. N.J.S.A. 17:30E—1 *et seq.* Because premium income and investments were insufficient to fund the JUA, surcharges for certain motor vehicle offenses were imposed to subsidize its income. Under the surcharge scheme, all moneys were billed and collected by the DMV, who retained the lesser of 10% or the actual cost of collection. N.J.S.A. 17:29A—35b. The remainder was remitted to the JUA until October 31, 1991. *Id.* Thereafter, the moneys were remitted to the New Jersey Automobile Insurance Guaranty Fund, a separate fund created within the state treasury by the Reform Act to satisfy existing and anticipated JUA obligations, and then to the MTF Revenue Fund to satisfy MTF obligations. The state legislature created the MTF in 1990 as a temporary successor to the financially distraught and mismanaged JUA. N.J.S.A. 17:33B—1 *et seq.*

This argument must also fail. The Eleventh Amendment bars suits in federal court by a citizen of a state against his own state or against a state agency or department. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). The amendment also prohibits suits against state officials when "'the state is the real, substantial party in interest.'" *Id.* at 101, 104 S.Ct. at 908 (quoting *Ford Motor Co. v. Department of Treasury of State of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350–51, 89 L.Ed. 389 (1945)). The state is the real party in interest if the decision rendered in a case would operate against the sovereign, expending itself on the public treasury, interfering with public administration, or compelling the State to act or refrain from acting. *Id.* at 101 n. 11, 104 S.Ct. at 908 n. 11 (quoting *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted)); *cf. Regents of the Univ. of Cal. v. Doe,* —— U.S. ——, —— – ——, 117 S.Ct. 900, 904–05, 137 L.Ed.2d 55 (1997) (holding that the federal government's agreement to indemnify a state instrumentality against the costs of litigation, including adverse judgments, did not divest the state agency of Eleventh Amendment immunity because indemnification did not alter the fact that the agency still had potential legal liability).

Applying the foregoing principles to the case at bar, it is clear that the DMV, which is a state agency, is a real party in interest for purposes of this appeal. The only way that the debtor could obtain a declaratory judgment that her surcharges, together with interest and costs, were included in her Chapter 7 discharge, would be if the Bankruptcy Court concluded that these surcharges are dischargeable. At a minimum, such a ruling would seriously interfere with the public administration of the surcharge program and the ability of high risk drivers to obtain and maintain insurance coverage. Thus, the DMV is a real party in interest.

*3. The Type of Relief Sought is Irrelevant*

■ Appellant also contends that the Eleventh Amendment is inapplicable here because she only seeks declaratory and injunctive relief against non-sovereign entities, rather than requesting money from the State of New Jersey's treasury. As noted above, however, the DMV is a real party in interest for purposes of this appeal. Therefore, because the "jurisdictional bar [of the Eleventh Amendment] applies regardless of the relief sought," this argument must fail.[5] *Pennhurst,* 465 U.S. at 100–01, 104 S.Ct. at 908. *See also Cory v. White,* 457 U.S. 85, 90, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the state itself simply because no money judgment is sought."); *In re Sacred Heart Hosp. of Norristown,* 204 B.R. 132, 139 (E.D.Pa.1997) (same).

*4. Defendant DMV Did Not Waive its Eleventh Amendment Immunity*

■ Even assuming that the DMV is a real party in interest in this matter, according to appellant, it waived its Eleventh Amendment immunity by appearing in this action, seeking judgment in its favor on the merits, and failing to raise any such objection before the trial court. *See* App. Supp. Br. at 11. Appellant also suggests that, by "setting up an insurance company as the state did here," defendants impliedly waived their Eleventh Amendment immunity pursuant to the Supreme Court's decision in *Parden v. Terminal Ry. of Ala. State Docks Dept.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). *Id.*

■ These arguments merit little discussion. A state defendant does not waive its Eleventh Amendment immunity by filing a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), by failing to raise the Eleventh

---

**5.** During oral argument, appellant suggested that "discharging" a debt does not implicate the Eleventh Amendment because it would not require the state treasury to issue an actual check to the debtor. As the Supreme Court recently observed in *Regents of the Univ. of Cal.,* —— U.S. at ——

——, 117 S.Ct. at 904–05, however, the relevant inquiry for Eleventh Amendment purposes is whether a state's potential legal rights are affected. Because discharging a debt would clearly have such an impact, appellant's argument must fail.

Amendment before the trial court, or by seeking judgment in its favor. *See College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 948 F.Supp. 400, 414 (D.N.J.1996) (citations omitted). Moreover, because the Eleventh Amendment is jurisdictional in the same sense as the complete diversity requirement, *see Wilson–Jones*, 99 F.3d at 206, it is immaterial that the State actually prevailed—to a large extent—in the court below. Finally, this Court has recently observed that *Parden* was overruled by implication in *Seminole Tribe* to the extent it permitted Congress to use its Article I powers to condition a state's participation in a particular market on its waiver of immunity from suit. *College Savings Bank*, 948 F.Supp. at 420 & n. 21. Therefore, appellant's contentions regarding waiver must also fail.

### 5. *Congress' Purported Abrogation Under 11 U.S.C. § 106(a) is Unconstitutional*

■ Finally, appellant argues that by enacting 11 U.S.C. § 106(a), Congress properly abrogated the States' sovereign immunity pursuant to § 5 of the Fourteenth Amendment. More specifically, appellant argues that

> [t]he Fourteenth Amendment, by referring back to "the privileges and immunities" necessarily meant to include those rights which Congress may grant to citizens pursuant to its Article I powers, including the Bankruptcy Power. The language in the Fourteenth Amendment is very similar to the language of 42 U.S.C. § 1983, which has been construed to include federal statutory rights. A discharge in bankruptcy is a privilege under United States law which immunizes a debtor from being sued by a creditor, and which prevents a State from discriminating against that debtor in the grant of a license. By not honoring the discharge in bankruptcy, the defendants in this case abridged the privileges and immunities of the debtor.

App. Supp. Br. at 14. By encompassing bankruptcy rights under the Fourteenth Amendment, according to appellant, "the Constitution can be read as a unified whole, and all of its articles and amendments can be harmonized." *Id.*

■ When determining whether Congress has abrogated the States' Eleventh Amendment immunity, we must conduct a two-part inquiry: "first, whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity,' and second, whether Congress has acted 'pursuant to a valid exercise of power.'" *Seminole Tribe*, —— U.S. at ——, 116 S.Ct. at 1123 (quoting *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 425–26, 88 L.Ed.2d 371 (1985)); *see also College Savings Bank*, 948 F.Supp. at 420.

Here, it is clear that § 106(a) of the Bankruptcy Code manifests the requisite intent to abrogate. *See Matter of Merchants Grain, Inc.*, 59 F.3d 630 (7th Cir.1995) (concluding that Congress' 1994 revision of § 106 unequivocally evidenced its intent to abrogate the States' immunity from suit), *vacated and remanded sub. nom., Ohio Agr. Commodity Depositors Fund v. Mahern*, —— U.S. ——, 116 S.Ct. 1411, 134 L.Ed.2d 537 (1996). Indeed, § 106(a) provides that: "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section...." 11 U.S.C. § 106(a).

■ It is equally clear that § 106(a) was enacted pursuant to the Bankruptcy Clause of the United States Constitution, *see In re Sacred Heart Hospital of Norristown*, 204 B.R. 132, 138 (E.D.Pa.1997); *Matter of Midland Mechanical Contractors, Inc.*, 200 B.R. 453, 458 (Bankr.N.D.Ga.1996), and that abrogation pursuant to any Article I power is invalid. *See Seminole Tribe*, —— U.S. at —— – ——, 116 S.Ct. at 1131–32. However, before concluding that § 106(a) is unconstitutional, we must consider whether Congress was authorized to abrogate the States' Eleventh Amendment immunity under § 5 of the Fourteenth Amendment. *See Ramirez v. Puerto Rico Fire Serv.*, 715 F.2d 694, 698 (1st Cir.1983) ("The omission of any ritualistic incantation of powers by the Congress is not determinative, for there is no requirement that the statute incorporate buzz words

such as 'Fourteenth Amendment' or 'section 5' ...."); *see also EEOC v. Wyoming,* 460 U.S. 226, 243 n. 18, 103 S.Ct. 1054, 1064 n. 18, 75 L.Ed.2d 18 (citation and quotation omitted); *College Savings Bank,* 948 F.Supp. at 422–23 n. 23.

Section 5 of the Fourteenth Amendment provides that "Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." U.S. CONST. amend. XIV, § 5. "Correctly viewed, § 5 is a positive grant of legislative power authorizing Congress to exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment." *Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 1723–24, 16 L.Ed.2d 828 (1966). Congress' power under § 5, however, "extends only to 'enforc[ing]' the provisions of the Fourteenth Amendment." *City of Boerne v. P.F. Flores,* — U.S. —, —, 117 S.Ct. 2157, 2164, 138 L.Ed.2d 624 (1997). A constitutional right is enforced by utilizing "measures that remedy or prevent unconstitutional actions," *id.,* not by altering the meaning of the right itself. *Id.*

The remedial and preventive nature of Congress' enforcement power, and the limitation inherent in the power, were confirmed in the Supreme Court's earliest cases on the Fourteenth Amendment. See *id. at* —, 117 S.Ct. at 2166 ("The power to 'legislate generally upon' life, liberty, and property, as opposed to the 'power to provide modes of redress' against offensive state action was 'repugnant' to the Constitution.") (quoting the *Civil Rights Cases,* 109 U.S. 3, 15, 3 S.Ct. 18, 24, 27 L.Ed. 835 (1883)). "Although the specific holdings of these earlier cases might have been superseded or modified, their treatment of Congress' § 5 power as corrective or preventive, not definitional, has not been questioned." *Id.* (citations omitted).

"While the line between measures that remedy or prevent unconstitutional actions and measures that make a substantive change in the governing law is not easy to discern," *id.* at —, 117 S.Ct. at 2164, the Court has indicated that "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id. See also id.* at —, 117 S.Ct. at 2169 ("The appropriateness of remedial measures must be considered in light of the evil presented. Strong measures appropriate to address one harm may be an unwarranted response to another, lesser one.") (citation omitted). Absent such a connection, "legislation may become substantive in operation and effect." *Id.* at —, 117 S.Ct. at 2164.

In applying this test to the Religious Freedom Restoration Act of 1993 ("RFRA"), the *City of Boerne* Court observed that, regardless of the state of the legislative record,

> RFRA cannot be considered remedial, preventive legislation, if those terms are to have any meaning. RFRA is so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior. It appears, instead, to attempt a substantive change in constitutional protections. Preventive measures prohibiting certain types of laws may be appropriate when there is reason to believe that many of the laws affected by the congressional enactment have a significant likelihood of being unconstitutional. *See City of Rome,* 446 U.S. at 177 [100 S.Ct. at 1561–62] (since "jurisdictions with a demonstrable history of intentional racial discrimination ... create the risk of purposeful discrimination" Congress could "prohibit changes that have a discriminatory impact" in those jurisdictions). Remedial legislation under § 5 "should be adapted to the mischief and wrong which the [Fourteenth] [A]mendment was intended to provide against." *Civil Rights Cases,* 109 U.S. at 13, 3 S.Ct. at 22–23.

*Id.* at —, 117 S.Ct. at 2170. Because the reach and scope of RFRA was "not designed to identify and counteract state laws likely to be unconstitutional because of their treatment of religion," see *id.* at —, 117 S.Ct. at 2171, the Court held that it was not a proper exercise of Congress' § 5 power and thus

unconstitutional. *Id.* at ——, 117 S.Ct. at 2172.

Based on the foregoing analysis, we must conclude that § 106(a) of the Bankruptcy Code was not enacted pursuant to a valid exercise of Congressional power. There is no suggestion in the text or legislative history of the Bankruptcy Reform Act of 1994 that Congress invoked its enforcement authority to remedy or deter a prior or ongoing constitutional wrong. *In re Creative Goldsmiths of Washington, D.C., Inc.,* 119 F.3d 1140, 1146–47 (4th Cir.1997); *In re NVR L.P.,* 206 B.R. 831, 840–41 (Bankr.E.D.Va. 1997); *In re Anton Motors, Inc.,* 177 B.R. 58, 61–63 (Bankr.D.Md.1995); *see also* 8 NORTON BANKR. L. & PRAC.2d § 106 (Supp.1997). Instead, "[t]he amendment was intended to effectively overrule [*United States v. Nordic Village, Inc.,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) *and Hoffman v. Connecticut Dept. of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) ], and to 'clarify[] the original intent of Congress in enacting Section 106 of the Bankruptcy Code with regard to sovereign immunity.'" *Matter of Merchants Grain, Inc.,* 59 F.3d at 634; *see also In re Anton Motors,* 177 B.R. at 63 ("It is the Committee's intent to make section 106 conform to the Congressional intent of the Bankruptcy Reform Act of 1978 waiving the sovereign immunity of the States and the Federal Government in this regard.") (quoting the Bankruptcy Reform Act of 1994, 140 CONG. REC. H10752, H10766 (daily ed. Oct. 4, 1994) (Section–By–Section Description)). The original intent of Congress in enacting section 106(c)—now § 106(a)—was "to make provisions of title 11 that encompassed the words 'creditor,' 'entity,' or 'governmental unit' applicable to the States. Congress also intended to make the States subject to a money judgment." 140 CONG. REC. H10766. Thus, there is no sug-

gestion that Section 113 of the Bankruptcy Reform Act of 1994 was enacted to counteract or correct prior or ongoing constitutional violations. Accordingly, we hold that § 106(a) of the Bankruptcy Code is unconstitutional as it was not enacted pursuant to § 5 of the Fourteenth Amendment.

Moreover, appellant's reliance on the Privileges and Immunities Clause of the Fourteenth Amendment does not change this analysis for at least two reasons. *See* App. Supp. Br. at 13–15 (citing *In re Headrick,* 200 B.R. 963 (Bankr.S.D.Ga.1996), *motion to amend denied by,* 203 B.R. 805 (Bankr.S.D.Ga.1996); *In re Southern Star Foods, Inc.,* 190 B.R. 419 (Bankr.E.D.Okla. 1995)). First, these cases failed to consider whether § 106(a) was enacted for remedial or preventive purposes. *See, e.g., In re Southern Star Foods,* 190 B.R. at 426 (concluding that because "Congress' exercise of its basic national legislative powers under any of the provisions of Article I will usually (if not invariably) implicate 'the privileges or immunities of citizens of the United States[,]'" such laws are enforceable "'through the Fourteenth Amendment.'"). Second, bankruptcy does not constitute a "privilege or immunity" under § 1 of the Fourteenth Amendment. *See In re NVR L.P.,* 206 B.R. at 842; *cf. Lutz v. City of York,* 899 F.2d 255 (3d Cir.1990). Thus, appellant's argument must be rejected.[6]

*6. Conclusion*

Appellant's arguments to the contrary notwithstanding, the DMV is a real party in interest for purposes of this appeal and, thus, it is entitled to Eleventh Amendment immunity. Moreover, the DMV has not waived its

---

6. Appellant also contends that her action against the DMV should not be dismissed because Congress has authority under the Fourteenth Amendment to authorize Section 1983 suits against states. *See* App. Supp. Br. at 6. However, it is well settled that Section 1983 does not abrogate the States' Eleventh Amendment immunity from suit, *Quern v. Jordan,* 440 U.S. 332, 344–45, 99 S.Ct. 1139, 1146–47, 59 L.Ed.2d 358 (1979), and

that a state is not a "person" within the meaning of Section 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 65–66, 109 S.Ct. 2304, 2309–10, 105 L.Ed.2d 45 (1989). Of course, it may still be possible to enjoin state officials from prospective violations of Section 1983. *Will,* 491 U.S. at 71 n. 10, 109 S.Ct. at 2312 n. 10 (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14,

immunity, nor has Congress validly abrogated this immunity pursuant to § 5 of the Fourteenth Amendment. Therefore, to the extent that the Bankruptcy Court's finding of nondischargeability implicates the legal rights of the DMV, this finding must be reversed for lack of subject matter jurisdiction.[7]

### C. IMPACT OF DMV'S DISMISSAL ON REMAINING APPEAL

By finding that appellant's claims against the DMV must be dismissed for lack of subject matter jurisdiction, we are confronted with several important procedural questions regarding the JUA and the MTF which must now be considered on remand.

■ To begin with, the Bankruptcy Court must consider on remand whether the JUA and the MTF are arms of the State of New Jersey which are entitled to Eleventh Amendment immunity. *See Christy v. Pennsylvania Turnpike Comm'n,* 54 F.3d 1140 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 340, 133 L.Ed.2d 238 (1995); *Urbano v. Bd. of Managers of N.J. State Prison,* 415 F.2d 247, 251–52 (3d Cir.1969), *cert. denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 128 (1970); *College Savings Bank,* 948 F.Supp. at 408–13. Clearly, a finding that these entities are entitled to Eleventh Amendment immunity would result in the dismissal of appellant's entire first claim and require the Bankruptcy Court to consider those claims which were previously denied as moot. This, in turn, would require the Bankruptcy Court to consider, *inter alia,* whether appellant's claims fit within the exception to the Eleventh Amendment set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *See also Idaho v. Coeur d'Alene Tribe of Idaho,* —— U.S. ——, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Seminole Tribe,* —— U.S. at —— – ——, 116 S.Ct. at 1132–33; *cf. Burgio and Campofelice, Inc. v. New York State Dept. of Labor,* 107 F.3d 1000, 1006–07 (2d Cir.1997).

■ Should the Bankruptcy Court find that the JUA and the MTF are not entitled to Eleventh Amendment immunity, then the Bankruptcy Court must consider whether the dismissal of the debtor's Adversary Complaint against the DMV requires the dismissal of appellant's entire first claim under Rule 19 of the Federal Rules of Civil Procedure. Rule 19 determines when joinder of a particular person is compulsory. A court must first determine whether the person should be joined pursuant to Rule 19(a). If Rule 19(a) is satisfied but joinder is "not feasible," the court must apply Rule 19(b) to determine whether, "in equity and good conscience," the party is "indispensable." If a court determines that the party is indispensable, the complaint must be dismissed. *See HB General Corp. v. Manchester Partners, L.P.,* 95 F.3d 1185, 1190 (3d Cir.1996).

■ If the Bankruptcy Court were to determine that dismissal is unwarranted under Rule 19, then the court would have to consider the merits of appellant's first claim. Before doing so, however, the lower court must permit the parties to develop a record with respect to the nature of the surcharges and the functions performed by the JUA and the MTF. The parties never had such an opportunity because the Bankruptcy Court decided *sua sponte* to convert defendants' Rule 12(b)(6) motion to a Rule 56 motion without providing adequate notice to the parties. *See Rose v. Bartle,* 871 F.2d 331, 342 (3d Cir.1989) (holding that "it is reversible error for a [trial] court to convert a motion under Rule 12(b)(6) ... into a motion for summary judgment unless the court provides notice of its intention to convert the motion and allows an opportunity to submit materials admissible in a summary judgment proceeding."); *see id.* at 340–41 n. 4 (observing that Rule 56(c) requires that the parties be provided at least ten days to file material in

105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985)).

**7.** Of course, had the State cross-appealed the Bankruptcy Court's finding that the administrative costs associated with the surcharge scheme were dischargeable, this finding would have also been reversed for lack of subject matter jurisdiction.

support and opposition to the converted motion for summary judgment).[8]

---

**8.** Although the record is not entirely clear, it appears that the Bankruptcy Court converted defendants' Rule 12(b)(6) motion because the debtor's brief included an attached transcript of a hearing before another bankruptcy judge. According to appellant, this transcript was included to support her legal argument regarding estoppel, rather for any testimony offered at the hearing. If this was indeed the purpose for submitting the transcript, then the Bankruptcy Court was never required to convert the motion in the first place. *See Nix v. Fulton Lodge No. 2 of Int'l Ass'n of Machinists and Aerospace Workers,* 452 F.2d 794, 797–98 (5th Cir.1971) ("By no stretch of the imagination can the Xerox copies of opinions of this court, attached to a memorandum of law submitted by the Grand Lodge in connection with the Rule 12(b)(6) motion be said to constitute matters outside the pleadings sufficient to transform a Rule 12(b)(6) motion into a motion for summary judgment.") (citation omitted), *cert. denied,* 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972); *cf. J/H Real Estate Inc. v. Abramson,* 901 F.Supp. 952, 955 & n. 3 (E.D.Pa.1995) (observing that, on a Rule 12(b)(6) motion, a court may also "consider matters of which judicial notice may be taken under FED R. EVID. 201.") (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991)).