**In re Robert W. VENABLE, Maria I. Venable, Debtors.**

**Maria I. Venable, Plaintiff,**

**v.**

**Maria J. Acosta, Officer M. Etheredge (Badge 9604) and Sgt. P. McCaulley, Individually and as agents of City of St. Augustine Police Department, City of St. Augustine Police Department, Defendants.**

**Bankruptcy No. 01–10601–BKC–3P3. Adversary No. 01–372.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

July 25, 2002.

Albert H. Mickler, Jacksonville, FL, for Debtors.

Mamie L. Davis, Jacksonville, FL, trustee.

*ORDER GRANTING MOTION TO DISMISS OF DEFENDANTS OFFICER M.E. ETHEREDGE, SGT. P. MCCAULLEY AND THE CITY OF ST. AUGUSTINE POLICE DEPARTMENT*

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court for continued pre-trial hearing on June 25, 2002, on the Motion to Dismiss filed by defendants Officer M. Etheredge, Sgt. P. McCaulley and City of St. Augustine Police Department ("Defendants").

The First Amended Complaint alleges that the Defendants violated the automatic stay under Section 362 by failing to intervene in a post-petition re-possession of plaintiff's vehicle. Plaintiff alleges she observed a truck towing her car, and called 911 to report that the car was stolen. In response to plaintiff's call, and without any knowledge that a private repossession was underway, Officer Etheredge was dispatched to look for the alleged stolen vehicle. He found a truck towing the alleged stolen vehicle, and stopped the truck to investigate.

Shortly thereafter, the plaintiff arrived on the scene and complained to Officer Etheredge about the private repossession. Plaintiff alleges she told Officer Etheredge about her bankruptcy case. Officer Etheredge observed what was happening, listened to the allegations of both parties, and made a decision not to interfere in the dispute. The plaintiff then went to the police station, and complained to Sgt. McCaulley. Sgt. McCaulley listened to plaintiff's argument, and decided not to interfere in the dispute between the plaintiff and the tow truck driver.

Defendants seek dismissal of the First Amended Complaint on the following grounds:

1. Plaintiff's claims are barred by the Eleventh Amendment to the United States Constitution.

2. Section 106 of the Bankruptcy Code is unconstitutional as applied to these Defendants.

3. Plaintiff's claims are barred by the doctrine of sovereign immunity.

Defendants' Motion To Dismiss states that both police officers followed the long standing St. Augustine Police Department policy of not interfering with civil disputes between private citizens. Defendants argue that for the court to intervene, it "inappropriately would entangle itself in fundamental questions of policy and planning." *Trianon Park Condominium Association, Inc. v. City of Hialeah,* 468 So.2d 912, 918 (Fla.1985).

Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss argues that Defendants, as a municipality and agents of a municipality, are not agents or agencies of the State of Florida and are not entitled to Eleventh Amendment or sovereign immunity protection.

The Court concludes that Defendants' Motion To Dismiss should be granted based on the following analysis of the law.

## I. § 106(A) OF THE BANKRUPTCY CODE IS UNCONSTITUTIONAL

As a preliminary matter, the Court finds that the United States Supreme Court has dealt with the issues raised in this proceeding, and concluded that § 106 of the Bankruptcy Code (11 U.S.C. § 106) is unconstitutional. In *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Court stated that in order to determine whether Congress has abrogated the states' sovereign immunity, it must ask two questions: first whether Congress has "unequivocally express[ed] its intent to ab-

rogate the immunity," and second, whether Congress has acted "pursuant to a valid exercise of power." The Court further held that "the Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." 517 U.S. at 72–73, 116 S.Ct. at 1131–32.[1]

In footnote 16, the Supreme Court recognized the bankruptcy implications of the *Seminole* decision:

> [I]t has not been widely thought that the federal antitrust, bankruptcy, or copyright statutes abrogated the States' sovereign immunity. This Court never has awarded relief against a State under any of those statutory schemes;
>
> ******
>
> Although the copyright and bankruptcy laws have existed practically since our nation's inception, and the antitrust laws have been in force for over a century, there is no established tradition in the lower federal courts of allowing enforcement of those federal statutes against the States. *Id.* at 73, 116 S.Ct. 1114.

A majority of federal courts have determined that *Seminole* leaves the Fourteenth Amendment as the sole avenue for Congress to validly abrogate a State's immunity. A majority of federal courts have also determined that Congress enacted the Bankruptcy Code pursuant to its Article I Bankruptcy Powers and not the Fourteenth Amendment. Consequently they have concluded that Congress' attempt to abrogate the state's sovereign immunity in the Bankruptcy Code is invalid. *In re Sacred Heart Hospital of Norristown,* 133 F.3d 237, 244 (3rd Cir.1998) (While Con-

gress need not recite words "section 5" or "Fourteenth Amendment" or "equal protection" when enacting laws pursuant to its power to enforce provisions of Fourteenth Amendment, if Congress does not explicitly identify source of its power as Fourteenth Amendment, there must be something about the Act connecting it to recognized Fourteenth Amendment aims); *In the Matter of the Estate of Fernandez,* 123 F.3d 241 (5th Cir.1997) (Congress did not have authority to abrogate, under Bankruptcy Code, state sovereign immunity pursuant to Fourteenth Amendment, given the lack of evidence that the Bankruptcy Reform Act of 1994 was enacted pursuant to Fourteenth Amendment, or that the Act was enacted to remedy any incipient breaches or even general violation of rights specified in the Fourteenth Amendment); *In re NVR, L.P.,* 206 B.R. 831 (Bankr.E.D.Va.1997) (Because Fourteenth Amendment based legislation imposes congressional policy on state involuntarily, and because it often intrudes on traditional state authority, courts should not quickly attribute to Congress unstated intent to act under its authority to enforce Fourteenth Amendment); *In re York— Hannover Developments, Inc.,* 201 B.R. 137 (Bankr.E.D.N.C.1996); *In re Tri–City Turf Club, Inc.,* 203 B.R. 617 (Bankr. E.D.Ky.1996) (Because Congress' abrogation of states' sovereign immunity in the Bankruptcy Code was not authorized under the Fourteenth Amendment, bankruptcy court lacked jurisdiction over Chapter 11 debtor's adversary proceeding); *In re Midland Mechanical Contractors, Inc.,* 200 B.R. 453 (Bankr.N.D.Ga.1996); *In re Burke,* 200 B.R. 282 (Bankr.S.D.Ga.1996); *In re Martinez,* 196 B.R. 225 (D.P.R.1996);

---

1. An exception to sovereign immunity is recognized when prospective injunctive relief is sought against a state official. *Seminole,* 517 U.S. at 73–75, 116 S.Ct. 1114 (citing *Ex parte* *Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). However, no such injunctive relief is requested in the Complaint in this proceeding..

*In re Kish,* 212 B.R. 808 (D.N.J.1997) (Bankruptcy does not constitute "privilege or immunity" under Fourteenth Amendment); *In re Mueller,* 211 B.R. 737 (Bankr.D.Mont.1997) (Congress did not enact Bankruptcy Code provision purporting to abrogate sovereign immunity as to certain bankruptcy issues under Privileges and Immunities Clause of the Fourteenth Amendment, as required to constitutionally abrogate sovereign immunity); *In re C.J. Rogers, Inc.,* 212 B.R. 265 (E.D.Mich. 1997) (Bankruptcy Code section deeming state to have waived its sovereign immunity to extent that claim against state involved same transaction that was subject of state's proof of claim was unconstitutional as Congress did not enact statute pursuant to its powers under Fourteenth Amendment); *In re Creative Goldsmiths of Washington D.C., Inc.,* 119 F.3d 1140 (4th Cir.1997) (Congress lacked power to use Bankruptcy Clause to circumvent Eleventh Amendment's restriction on federal jurisdiction, and provision could not be sustained under Fourteenth Amendment's enforcement clause, given lack of evidence that Congress passed Bankruptcy Code under that clause or sought to preserve core values specifically enumerated in Amendment); *In re Koehler,* 204 B.R. 210 (Bankr.D.Minn.1997) (Congress, under Fourteenth Amendment, has power to abrogate state's Eleventh Amendment immunity by making its intention to do so unmistakably clear in language of statute); *In re Mitchell,* 222 B.R. 877 (9th Cir. BAP 1998); *In re Scarborough,* 229 B.R. 145 (Bankr.W.D.Mich.1999) (bankruptcy court lacked subject matter jurisdiction to determine dischargeability of state funded student loans); *In re Straight,* 248 B.R. 403 (10th Cir. BAP 2000) (Complaint alleging that the State of Wyoming Department of Transportation violated the automatic stay was dismissed because claims were barred by 11th Amendment and sovereign immunity).

Some federal courts have determined that Congress enacted the Bankruptcy Code pursuant to the Fourteenth Amendment. However, every Circuit Court decision considering the question after *Seminole Tribe* was decided have ruled that § 106(a) cannot be interpreted to have resulted from an exercise of Congress' power to enforce the Fourteenth Amendment. See *Sacred Heart Hosp. v. Pennsylvania Dep't of Pub. Welfare (In re Sacred Heart Hosp.),* 133 F.3d 237, 243–44 (3d Cir.1998); *Department of Transp. & Dev. v. PNL Asset Management Co. LLC (In re Fernandez),* 123 F.3d 241, 245 (5th Cir.1997), amended on different point, 130 F.3d 1138; *Schlossberg v. Maryland Comptroller of the Treasury (In re Creative Goldsmiths of Washington, D.C., Inc.),* 119 F.3d 1140, 1146–47 (4th Cir.1997), cert. denied, 523 U.S. 1075, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998).

Since *Seminole Tribe,* the Supreme Court has decided a number of cases concerning Congress' power to enforce the Fourteenth Amendment. In the first, *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), a church alleged that a religiously-neutral state law of general applicability violated the Religious Freedom Restoration Act of 1993 (RFRA) by infringing on the church's free exercise of its religion. As the case came to the Court, the question was whether RFRA was a constitutional use of Congress' power to enforce the Fourteenth Amendment. The Court concluded RFRA did not merely enforce the Due Process or Equal Protection Clauses of the Amendment, but instead exceeded Congress' authority because it sought to change what the rights protected by those Clauses were. *Id.* at 531–32, 117 S.Ct. 2157.

In the summer of 1999, the Court decided two cases directly involving Congressional attempts to abrogate the States' sovereign immunity that were claimed to be permissible exercises of its Fourteenth Amendment enforcement power. The Court found both attempts to be invalid. In one of the cases, *College Savings Bank*, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999), the Court ruled that property rights allegedly being protected under the Trademark Remedy Clarification Act were not property rights protected by the Due Process Clause of the Fourteenth Amendment. *Id.* at 671–75, 119 S.Ct. at 2224–25. Consequently, the Act could not constitutionally abrogate the States' immunity in order to protect those rights. *Id.*

The second case is *Florida Prepaid etc. v. College Savings Bank v.* 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999), where the Court indicated that the abrogation attempted in the Patent and Plant Variety Protection Remedy Clarification Act was not permissible because Congress had failed to identify any pattern of patent infringement by the States, much less a pattern of unremedied patent infringement. *Id.* at 639–40, 119 S.Ct. at 2207.

More recently, in *Kimel v. Florida Board of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), the Court ruled that the abrogation of the States' immunity found in the Age Discrimination in Employment Act (ADEA) also exceeded Congress' § 5 enforcement power.

These cases indicate that only a history of constitutional violations of the substantive provisions of the Fourteenth Amendment by the States can justify a statute abrogating their immunity in order to "enforce" those substantive provisions against them. Furthermore, the Supreme Court has held that there is no constitutional right to a bankruptcy discharge, *United States v. Kras*, 409 U.S. 434, 446–47, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), and seems unlikely now to recognize any other general bankruptcy rights as inherent in the Constitution.

For the foregoing reasons, and pursuant to *Seminole*, Congress' attempt in enacting § 106 to abrogate the states' Eleventh Amendment immunity is unconstitutional. "Congress' bankruptcy powers granted in Article I, § 8 do not confer on Congress the power to abrogate a state's Eleventh Amendment rights . . ." *Id.*

## II. PLAINTIFFS' CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Eleventh Amendment limits Article III judicial power, denying to federal courts "authority to entertain a suit brought by private parties against a state without its consent." *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945). It reflects a broad principle of sovereign immunity which also extends to protect a State from suits brought without the State's consent by the State's own citizens, *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and suits invoking the federal-question jurisdiction of Article III courts. *Coeur d'Alene*, 521 U.S. at 266–68, 117 S.Ct. at 2033, 138 L.Ed.2d at 447; *Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179, 1183 (9th Cir.1997).

In the case of *In re Grewe,* 4 F.3d 299, 304 (4th Cir.1993), the Fourth Circuit concluded; "while functionally there may appear to be a separate bankruptcy court, for jurisdictional purposes there is only one court, i.e., the district court." Because the bankruptcy court is a unit of the district court for jurisdictional purposes, and the district court was created under Article III of the Constitution, the Eleventh Amendment clearly restricts judicial power under Article III and therefore applies to the bankruptcy court.

Case law holds that the Eleventh Amendment bars: (1) a court's subject matter jurisdiction over the suit, *Demery v. Kupperman,* 735 F.2d 1139, 1149 n. 8 (9th Cir.1984), cert. denied sub nom. *Rowland v. Demery,* 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985); (2) its assertion of personal jurisdiction over the State, *In re PEAKSolutions Corp.,* 168 B.R. 918, 922 & n. 10 (Bankr.D.Minn.1994); or (3) both subject matter and personal jurisdiction, *See In re Neary,* 220 B.R. 864, 865 n. 1 (Bankr.E.D.Pa.1998) (exercising the court's inherent authority to determine its jurisdiction over "both the subject matter and the parties involved"); or (4) federal question jurisdiction, *In re Prairie Island Dakota Sioux,* 21 F.3d 302, 304 (8th Cir.1994) (holding that while sovereign immunity is jurisdictional, it is "not of the same character as subject matter jurisdiction").

The Supreme Court has held that the jurisdictional bar of the Eleventh Amendment applies "regardless of the relief sought." *Pennhurst,* 465 U.S. at 100–01, 104 S.Ct. 900. See also *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 58, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ("the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment"). The Eleventh Amendment "serves to avoid 'the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" *Id.* (quoting *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993)). Furthermore, the Supreme Court has emphasized "the importance of a State's legal liability" and has held that the Eleventh Amendment "protects the State from the risk of adverse judgments," even though the judgment will have no impact upon the state treasury. *Regents of the University of California v. Doe,* 519 U.S. 425, 431, 117 S.Ct. 900, 904–05, 137 L.Ed.2d 55, 61–62 (1997).[2]

Several courts which have examined the applicability of the Eleventh Amendment to declaratory judgment actions have concluded that the Eleventh Amendment extends to suits for declaratory relief as well as for money damages. See *In re Morrell,*

---

**2.** However, in the case of *In re Ranstrom,* 215 B.R. 454, 455–56 (Bankr.N.D.Cal.1997), the debtors' amended complaint added a claim for damages for violation of the automatic stay. The bankruptcy court held that the State was immune from the money judgment in bankruptcy court, but not from a determination that the State's claims had been discharged. The reasons given by the court for so holding were as follows: (1) the "benign nature" of the dischargeability proceeding which was not a suit for monetary recovery; (2) the legislative intention to give bankruptcy courts the power to determine dischargeabili-

ty issues; (3) policy considerations to allow the bankruptcy court to determine whether a tax has been discharged considering the money bankruptcy estates provide to State treasuries; and (4) if the Supreme Court interprets the Eleventh Amendment so strictly that it interferes with Congress' power to make effective bankruptcy laws, the Eleventh Amendment should also be restricted to its express terms that it applies only to suits brought against a State by citizens of another State. *Ranstrom,* 215 B.R. at 455; see also *Seminole,* 517 U.S. at 110, 116 S.Ct. 1114 (J. Souter, dissenting).

218 B.R. 87, 89–90 (Bankr.C.D.Cal.1997) (chapter 7 debtor's complaint to determine dischargeability of tax debt was barred by Eleventh Amendment); *In re Kish,* 212 B.R. 808, 812 (D.N.J.1997) (chapter 7 debtor's complaint to determine that state surcharges were discharged was barred by the Eleventh Amendment); *In re Rose,* 214 B.R. 372, 376 (Bankr.W.D.Mo.1997) (granting state agency's motion to dismiss debtor's complaint to determine dischargeability of student loan debt).

Application of the Eleventh Amendment to this case requires analysis of the following issues.

### A. The Defendant Police Officers And The City of St. Augustine Police Department Are Agents And Agencies of The State Florida.

■ Plaintiff argues that Defendants are not agencies of the State of Florida, and not entitled to Eleventh Amendment or sovereign immunity protection, but Florida law states otherwise. In particular, Florida Statute § 768.28, which contains a limited waiver of sovereign immunity for state agencies, specifically defines state agencies to include "counties and municipalities."

The Florida Supreme Court has consistently recognized that counties and municipalities and their agents are entitled to sovereign immunity protection. The leading sovereign immunity cases in Florida all involve municipalities. See, e.g., *Trianon Park Condominium Ass'n v. City of Hialeah,* 468 So.2d 912, 917 (Fla.1985), and *Commercial Carrier Corp. v. Indian River County,* 371 So.2d 1010, 1020 (Fla.1979).

In *Everton v. Willard,* 468 So.2d 936 (Fla.1985), the Court applied the sovereign immunity doctrine to police officers. An action was brought to recover damages arising out of death and injuries sustained in collision allegedly caused by intoxicated motorist who had been released on citation by deputy sheriff rather than arrested. The Florida Supreme Court held that the deputy sheriff's decision not to arrest motorist on intoxicated driving charge, but instead to merely issue citation and permit motorist to drive on, was a judgmental or discretionary, not ministerial, governmental function immune from suit by the innocent third parties as against the deputy, sheriff's department, and county. The Court stated:

> It is important to recognize that ... the basic principle involved concerns the liability of all governmental bodies and their taxpayers for the negligent failure of their law enforcement officers to protect their citizens from every type of criminal offense. **There has never been a common law duty of care owed to an individual with respect to the discretionary judgmental power granted a police officer to make an arrest and to enforce the law.** This discretionary power is considered basic to the police power function of governmental entities and is recognized as critical to a law enforcement officer's ability to carry out his duties.
>
> \*\*\*\*\*\*
>
> In our opinion, there is no distinction between the immunity afforded the police officer in making a determination of whether to arrest an individual for an offense and the discretionary decision of the prosecutor of whether to prosecute an individual or the judge's decision of whether to release an individual on bail or to place him on probation. All of these decisions are basic discretionary, judgmental decisions that are inherent in enforcing the laws of the state. (Emphasis added).

Based upon the foregoing authority, the City of St. Augustine Police Department and its police officers are agents of the

State of Florida, and the Eleventh Amendment is a bar against any claims against them in this Court.

### B. The City Has Not Waived Its Sovereign Immunity.

 The United States Supreme Court has held that a sovereign's immunity may be waived and a State agency may consent to suit in federal court. However, the State agency's consent must be unequivocally expressed. *Clark v. Barnard*, 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883), *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

Section 106(b) of the Bankruptcy Code provides for a deemed waiver of the governmental unit's sovereign immunity if it files a proof of claim. Since the Defendants did not file a proof of claim in Debtors' bankruptcy case, § 106(b) is not applicable. The Defendants also have not in any other way "unequivocally expressed a waiver." "A state defendant does not waive its Eleventh Amendment immunity by filing a motion to dismiss ... by failing to raise the Eleventh Amendment before the trial court, or by seeking judgment in its favor." *In re Kish*, 212 B.R. 808, 814 (D.N.J.1997). A State waives its immunity and consents to suit in federal court by specific declaration or by act, such as filing general appearance, or by becoming plaintiff or intervenor in a federal lawsuit. *In re C.J. Rogers, Inc.*, 212 B.R. 265 (E.D.Mich.1997).

For the foregoing reasons, the Eleventh Amendment to the United States Constitution prohibits this Court from exercising any authority to entertain this proceeding by private parties against the Defendants, who under Florida law are agents and agencies of the State of Florida, without their consent.

### III. PLAINTIFFS' CLAIMS ARE BARRED BY THE DOCTRINE OF SOVEREIGN IMMUNITY

 Even if the Eleventh Amendment were not a bar to the Plaintiff's claims, the Court find that Defendants' Motion To Dismiss should be granted under general law of sovereign immunity.

In *Trianon Park Condominium Ass'n v. City of Hialeah*, 468 So.2d 912, 917 (Fla. 1985), the Florida Supreme Court explained that the liability of the City of Hialeah depended on an analysis of (1) whether there is an underlying common law or statutory duty of care which inures to the benefit of the plaintiff, and (2) whether the alleged action is one for which sovereign immunity has been waived. For certain judgmental or discretionary governmental activities there has never been a common law duty of care.

The Florida Supreme Court further held that there had never been a common law or statutory duty of care to enforce a law for the benefit of an individual, and that how a governmental entity exercises its police power to enforce compliance with the laws is a matter of governance which is immune from liability. *Trianon Park*, 468 So.2d at 921–922.

A substantial majority of the jurisdictions in this country that have addressed this issue follow this same view. See, e.g., *Trautman v. City of Stamford*, 32 Conn. Supp. 258, 350 A.2d 782 (1975); *Crouch v. Hall*, 406 N.E.2d 303 (Ind.App.1980); *Commercial Union Insurance Co. v. City of Wichita*, 217 Kan. 44, 536 P.2d 54 (1975); *Zavala v. Zinser*, 123 Mich.App. 352, 333 N.W.2d 278 (1983); *Cairl v. State*, 323 N.W.2d 20 (Minn.1982); *Maynard v. City of Madison*, 101 Wis.2d 273, 304 N.W.2d 163 (1981).

Other Florida cases involving police officers' activities have reached the same re-

sult. For example, in *Garcia v. Reyes* 697 So.2d 549 (Fla. 4th DCA 1997), the plaintiff sued a City for wrongful imprisonment resulting from police misconduct. The Court held there is no cause of action for damages against the state, its agencies or employees acting in their official capacities for police misconduct arising directly under the due process clause of the Florida Constitution, and if such an action did exist it would be barred by sovereign immunity. See also *Vann v. Department of Corrections*, 662 So.2d 339 (Fla.1995) (State has no liability for the acts of escaped prisoners, even where escaped prisoner killed a man, because there exists a general duty to protect the public as a whole, but there is no duty of care to an individual citizen).

In this case, the Defendant police officers' activities are clearly discretionary. The police officers did nothing more than follow the long standing St. Augustine Police Department policy of not interfering with civil disputes between private citizens. That policy resulted from the City's exercise of its executive power such that, for the court to intervene, it "inappropriately would entangle itself in fundamental questions of policy and planning." *Trianon Park Condominium* at 918; *Department of Health and Rehabilitative Serv. v. Yamuni*, 529 So.2d 258, 260 (Fla.1988).

Furthermore, there is no common law to prevent the misconduct of third parties. *Department of Health and Rehabilitative Serv. v. Whaley*, 574 So.2d 100, 102–03 (Fla.1991). Therefore, a private individual may not sue a governmental unit for the alleged governmental failure to protect a private person from the wrongdoing of another private third party.

Other Florida courts have also found no liability on the part of the counties and cities and their agents when a discretionary activity was involved. *Wong v. City of Miami*, 237 So.2d 132, 134 (Fla.1970) (the city and county were not liable for riot damage to plaintiffs' business because "inherent in the right to exercise police powers is the right to determine strategy and tactics for the deployment of those powers.... The sovereign authorities ought to be free to exercise their discretion and choose the tactics deemed appropriate without worry over possible allegations of negligence"); *City of Orlando v. Kazarian*, 481 So.2d 506 (Fla. 5th DCA 1985) (city resident could not recover from city damages that allegedly arose from the city's handling of a dispute with neighbor, where the record failed to establish that city owed the resident a special or extraordinary duty of care).

### CONCLUSION

On the basis of the foregoing authority, the Motion to Dismiss filed by defendants Officer M. Etheredge, Sgt. P. McCaulley and City of St. Augustine Police Department is granted, and the First Amended Complaint is dismissed with prejudice as to those Defendants.